[Civil No. 1307.   Filed June 28, 1913.]

[134 Pac. 280.]

## J. W. BENNIE, Appellant, v. THE BECKER–FRANZ COMPANY, a Corporation, Appellee.

1. CONTRACTS—TIME OF ESSENCE—CONSTRUCTION OF CONTRACT.—An express stipulation making time of the essence of a contract is not always essential, as such a provision may be implied from the character of the subject matter, as where it is likely to undergo frequent or great fluctuations in value, as in the case of mineral property.

2. CONTRACTS—CONSTRUCTION—TIME OF ESSENCE—WAIVER.—Where a contract contains a provision that time is of the essence, either by express language or by reason of the character of the property, such requirement may be waived either by agreement or by estoppel growing out of the conduct of the parties.

3. VENDOR AND PURCHASER—MINING CLAIMS—SALE—PERFORMANCE BY PURCHASER—DELAY—WAIVER.—Plaintiff contracted to convey certain mining claims to defendant in consideration of $100 cash, $6,150 on the deposit of proper abstracts, and $6,250 on July 31, 1909; defendant being entitled to convey to plaintiff a forty-nine one-hundredths interest in the claims prior to July 31, 1909, in lieu of the last payment. Defendant did not make such payment nor offer to convey such interest within the time to plaintiff, who took no steps to declare a forfeiture other than by a suit to quiet title in February, 1912; plaintiff and defendant in the meantime having co-operated in certain litigation between plaintiff and a third person to defeat an adverse claim. Defendant was in possession in 1908 and 1909 and did considerable development work, and plaintiff was in possession and performed the assessment work after 1910. *Held,* that plaintiff waived a strict performance of the contract and was not entitled to forfeit defendant's rights therein without first giving him an opportunity to pay the balance of the price or convey the interest specified in lieu thereof.

APPEAL from a judgment of the Superior Court of the County of Greenlee.   F. B. Laine, Judge.   Reversed and remanded.

### STATEMENT OF FACTS BY THE COURT.

The appellee, as plaintiff below, instituted an action against appellant, defendant below, to quiet its title to 14 mining claims and one mill site, situate in Greenlee county.

The defendant in his answer admitted that he claimed an estate and interest in the property sued for and pleaded, as

showing his interest and estate, the following agreement entered into between the plaintiff and defendant, to wit:

"This agreement made and entered into this thirtieth day of November, A. D. 1908, by and between the BECKER-FRANZ COMPANY, a corporation, created and existing under the laws of the territory of Arizona, whose principal place of business is at Clifton, county of Graham, territory of Arizona, party of the first part, and J. W. BENNIE, of Clifton, county of Graham, territory of Arizona, party of the second part, WITNESSETH:

"That for and in consideration of the sum of twelve thousand five hundred dollars ($12,500.00) to be paid in amounts and manner hereinafter set forth, said party of the first part hereby covenants and agrees to transfer to the said party of the second part, his heirs or assigns, a good, clear and equitable title to certain unpatented lode mining claims, fourteen in number, and one mill site, all situate in Greenlee Gold Mountain Mining District, county of Graham, territory of Arizona.

"The terms of such payment shall be: One hundred dollars ($100.00) cash on the execution of this agreement, and deposit of deed or deeds in escrow with the Gila Valley Bank & Trust Company, of Clifton, county of Graham, territory aforesaid. Six thousand one hundred fifty dollars ($6,150.00) to be paid, through the escrow agent above mentioned, immediately on deposit therewith of necessary abstract of title or such other documents as may be required to show that the title to such property is vested in the said party of the first part. Six thousand two hundred fifty dollars ($6,250.00) cash to be paid on or before the 31st day of July, A. D. 1909.

"It is however mutually understood and agreed by and between the parties hereto that the said party of the second part shall have the right to transfer and convey unto the said party of the first part, its successors or assigns, at any time prior to the 31st day of July, A. D. 1909, a forty-nine one-hundredths (49/100) interest in and to the property hereinbefore mentioned, in lieu of the payment of the said sum of six thousand two hundred fifty dollars ($6,250.00) which is to become due on that date, in accordance with the terms of this contract, and the said party of the first part agrees to accept such forty-nine one-hundredths (49/100) interest in full settlement of such payment so due.

"And it is further understood and agreed by and between the parties hereto, that should the said party of the second part elect to make the transfer of the forty-nine one-hundredths (49/100) interest in and to the property hereinbefore mentioned, in lieu of the payment of said sum of six thousand two hundred fifty dollars ($6,250.00) as aforesaid, then, and in that case, said party of the second part, his heirs or assigns shall have the right and option of purchasing the aforementioned forty-nine one-hundredths (49/100) interest in the property herein referred to, at any time after the first day of August, A. D. 1909, and prior to the first day of December, 1910, for the sum of ten thousand dollars ($10,000.00).

"And in consideration of the covenants and agreements on the part of the party of the first part to be performed as herein set forth, the said party of the second part hereby covenants and agrees that he will expend in the development of the property hereinbefore referred to, and prior to the 31st day of December, 1908, a sum or sums, of money not less than five hundred dollars ($500.00).

"And the said party of the second part, in consideration of the faithful performance of the covenants and agreements on the part of the party of the first part to be performed, as herein set forth, further agrees that he will expend in the development of the property hereinbefore referred to, and prior to the 31st day of December, A. D. 1909, a sum or sums of money not less than fifteen hundred dollars ($1,500.00) in addition to the amount referred to in the paragraph herein next preceding.

"This agreement is entered into on behalf of the party of the first part pursuant to authority given by its board of directors.

"IN WITNESS WHEREOF the said party of the first part has hereunto caused its corporate seal to be affixed, and these presents to be signed by its vice president, and attested by its secretary, and the party of the second part has hereunto affixed his signature, the day and year first above written.

"November 30th, 1908.

"THE BECKER–FRANZ COMPANY,

"[Corporate Seal]        By A. A. ANDERSON, Vice-President.

"G. A. FRANZ, Secretary."

Defendant further alleged the due execution of deeds by plaintiff and their deposit with escrow-keeper with instructions to the latter, the payment of $100 as agreed, the deposit with escrow-keeper of abstract of title and documents of title on December 10, 1908, and the payment on said date of $6,150, expending in development the sum of $874 for the year 1908 and the sum of $8,539.83 for the year 1909. The defendant further alleges as an excuse for not making the last payment of $6,250 or deeding forty-nine hundredths of the property back to plaintiff on or before July 31, 1909, as provided in the above agreement, that he had learned prior to that date that the Sierra de Oro Gold Mining and Milling Company, Limited, had applied for patent to certain of its mining claims that lapped on to and conflicted with the mining claims involved in this suit; that plaintiff instituted a suit against the Sierra de Oro Gold Mining and Milling Company, Limited, to quiet its title to said conflict; that the defendant contributed fifty-one per cent of the expense of said litigation, amounting to $506.36, in accordance with his interest in said property under said contract. Then follows the allegation: "And this defendant alleges that by reason of plaintiff's conduct in receiving and accepting from defendant said contribution to the expense of said litigation, the plaintiff then well knowing that the defendant had neither paid to the plaintiff the further sum of $6,250 provided in said contract to be paid on or before the 31st day of July, 1909, nor conveyed to the plaintiff a 49/100 interest in said property on or before said last-mentioned date in lieu of said payment in cash as provided therein, the plaintiff waived the performance upon the 31st day of July, 1909, of the conditions of said contract required of defendant to be performed."

The prayer was that, as a condition to granting the relief asked by plaintiff, the plaintiff be required to repay to defendant the sums paid on purchase price on development work and expenses contributed to the Sierra de Oro Gold Mining and Milling Company, Limited, litigation, and for equitable relief.

Shortly after the above suit was filed, appellant began an action against appellee and in his complaint alleged practically the same facts as were set forth in his answer, as above epitomized, and prayed for a moneyed judgment. The

Becker-Franz Company answer this complaint admitting the agreement. It denies appellant contributed fifty-one per cent or $506.36 toward the expense of the Sierra de Oro litigation at request of appellee, and avers that appellee voluntarily contributed one-half of the expenses of such litigation as a gift to appellant and not otherwise. The appellee further denies a waiver as to time of payment of the $6,250 provided to be paid on or before July 31, 1909, or in lieu thereof a conveyance on or before that date of forty-nine one-hundredths interest in said property to appellee.

By agreement of counsel and by order of the court the two actions were consolidated and tried as one action. The trial was before the court without a jury. The court made findings of fact, and such facts as we deem necessary are set forth in the opinion.

Judgment was entered for appellee quieting its title to the mining claims and mill site. This appeal is prosecuted from the judgment and from the order overruling a motion for a new trial. The evidence taken at the trial is not made a part of the record on appeal.

Messrs. Armstrong & Lewis, for Appellant.

Mr. L. Kearney, for Appellee.

ROSS, J.—The question in this case, reduced to its simplest form, is, Do the pleadings and the findings of fact sustain the judgment?

It seems clear from the terms of the agreement that appellant had the right of exercising his choice of either paying the appellee on or before July 31, 1909, $6,250, or conveying to appellee forty-nine one-hundredths of the property. It was contemplated that the exercise of this right of choice should be made on or before said date. A failure of appellant to pay the $6,250 or to execute a conveyance of forty-nine one-hundredths to appellee, as provided in the agreement, ordinarily would entitle the appellee to declare a forfeiture of the contract.

The agreement does not, by express terms, make time the essence of the contract, but an express stipulation to that effect is not always essential, as it may be implied from the

character of the subject matter, as where it is likely to undergo sudden, frequent or great fluctuations of value. This is especially true of mineral property. *Waterman* v. *Banks*, 144 U. S. 394, 403, 36 L. Ed. 479, 12 Sup. Ct. Rep. 646; *Merk* v. *Bowery Min. Co.*, 31 Mont. 298, 78 Pac. 519; *Williams* v. *Long*, 139 Cal. 186, 72 Pac. 911; *Snider* v. *Yarbrough*, 43 Mont. 203, 115 Pac. 411; 27 Cyc. 674.

It is also well settled that even though time is of the essence of the contract, whether by express language or by reason of the nature and character of the property, it may be waived. A waiver may arise by agreement or by estoppel growing out of the conduct of the parties. *Boone* v. *Templeman*, 158 Cal. 290, 139 Am. St. Rep. 126, and note, 110 Pac. 947.

The pleadings and findings of fact disclose that appellee took no step to declare a forfeiture on July 31, 1909, or at all, except by the institution of this suit in February, 1912. Appellant pleads a waiver of strict compliance of the terms of the contract by appellee pending the litigation with the Sierra de Oro Gold Mining and Milling Company over title to part of the property; and while, in terms, the court fails to find on this issue, there is a finding that a suit was instituted by appellee against the Sierra de Oro Company which resulted in a judgment against appellee on October 3, 1910, whereby a portion of certain of the mining claims "agreed to be sold to Bennie was lost to plaintiff." There is the further finding that appellant "contributed 51 per cent of the expenses of litigation in said cause of the Becker-Franz Company, a corporation, against the Sierra de Oro Gold Mining and Milling Company." Thus it is seen that long after July 31, 1909, the appellee and appellant were co-operating in an effort to clear up the title to the property, paying forty-nine per cent and fifty-one per cent respectively, of the expenses of a lawsuit prosecuted in the name of the appellee. While there is no finding as to who was in possession of the property in 1910, there is a finding that appellant was in possession in 1908 and 1909 and that he did considerable development during those years. Another finding is that the appellee had performed the annual assessment since 1910 "and is now in the possession of said property." We think it may be reasonably inferred, taking these two findings together, that appellant was in possession during 1910 and did the representation work

for that year. This is certain as will be shown further on in this opinion. If there was an agreement, either express or implied, that the payment of the last $6,250, or in lieu thereof a deed of conveyance of forty-nine one-hundredths of the property to appellee, should be postponed beyond July 31, 1909, the date fixed in the agreement for the doing of one or the other, the appellee is not in a position to declare a forfeiture, at least until it has fixed another date for performance and given appellant a reasonable time in which to act.

"Where time was originally essential, but for sufficient cause a forfeiture for default therein has been waived, time ceases to be essential and becomes only material thereafter until (when) the vendor again makes it essential by a proper notice and demand." *Boone* v. *Templeman, supra*; 39 Cyc. 1345, 1349, 1350.

In *Opejon* v. *Engebo* (Wash.), 131 Pac. 1146, it is said: "The rule is well settled in this state that, after a party has waived the essence clause of a contract, the purchaser will not be in default until after a demand has been made upon him for a compliance with his contract and a reasonable time has elapsed in which to comply with the demand."

The entering of judgment in this case quieting appellee's title must be justified, if at all, by the following finding of fact: "That the defendant herein failed and neglected to exercise his right to complete his purchase of said mining property on or before the 31st day of July, 1909, by the payment of the sum of $6,250 as agreed, and failed and neglected to transfer and convey unto the said plaintiff herein, its successors or assigns, at any time prior to the 31st day of July, 1909, a forty-nine one-hundredths interest in and to the said property in lieu of the payment of the said sum of $6,250 in accordance with the terms of his contract, and failed and neglected to exercise his option to purchase said forty-nine one-hundredths interest in and to said property at any time after August 1, 1909, and December 1, 1910, for the sum of $10,000 in accordance with the terms of his said contract."

It does not seem to us, in view of the findings above analyzed, that the mere fact of failing and neglecting to make the payment mentioned or, in lieu thereof, the deed on or before July 31, 1909, was equivalent to a finding of a forfeiture of the contract. If that were so, it follows that the

essence clause may never be waived. The crux of this case hangs upon the question as to whether or not there was a waiver of the essence clause, for the findings are that appellant did everything required of him under the agreement, except that he failed to pay $6,250 prior to July 31, 1909, or to convey to the appellee prior to said date forty-nine one-hundredths interest in the property in lieu thereof. After that date the parties joined in an effort to clear the title that lasted till October 3, 1910. Appellant remained in possession during 1908, 1909 and 1910, and performed the annual assessment work for those years.

That part of the court's finding that the appellant had "failed and neglected to exercise his option to purchase said forty-nine one-hundredths interest in and to said property at any time after August 1, 1909, and December 1, 1910, for the sum of $10,000 in accordance with the terms of said contract," is aside from any issue involved, except the case was tried upon the theory that the appellee had waived a strict compliance of the essence clause. For no such option existed under the agreement until after appellant had deeded forty-nine one-hundredths of the property to appellee. Indeed, in that connection, appellee in its brief states that appellant "had until December 1, 1910, to make his final payment of $10,000 and take the property over."

We think a fair and reasonable inference from the findings is that the appellee waived a strict compliance of the essence clause, and that it ought not to be permitted to declare a forfeiture without first giving the appellant an opportunity to pay the balance of the agreed purchase price or at his election, in lieu thereof, convey to appellee forty-nine one-hundredths of the property. There being no finding that such opportunity was given the appellant, we think, under the decisions in *Boone* v. *Templeman, supra,* and *Opejon* v. *Engebo, supra,* the findings fail to sustain the judgment.

We do not intend that it should be understood that the appellee, after submitting an abstract of title satisfactory to appellant, was under any legal obligation to institute and prosecute the suit against the Sierra de Oro Company, but we do hold that in so doing, after the date fixed in the essence clause, with the co-operation and financial aid of appellant, it recognized that appellant had rights in the property. It was

held in *Lyons* v. *Wait et al.,* 51 N. J. Eq. 60, 26 Atl. 334, that, "where the vendor and vendee are endeavoring to remove some supposed encumbrance or cloud upon the title, neither has a right to consider his obligations to the other determined without reasonable notice." *Opejon* v. *Engebo, supra.*

For the reason that the findings clearly show that the essence clause of the agreement between appellant and appellee was waived, and there being no finding that appellee subsequently, by notice or otherwise, revived said essence clause and demanded performance within a reasonable time, the judgment of the lower court is reversed, and the case is remanded for a new trial.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J., Concurring.—I concur in the order of the majority of the court reversing the judgment appealed from for the following reasons: The action is the statutory action in the nature of the equitable action to quiet title. The adverse claim of the defendant is founded upon a written contract made between the parties, plaintiff and defendant, on November 30, 1908, and the purpose of the suit was to remove from plaintiff's title any cloud cast thereon by this contract of record. In the suit which was afterward commenced by the defendant, but consolidated and tried with the original suit, plaintiff, as defendant therein, admitted the contract. The construction and effect of this contract is the principal question litigated by the parties—all other questions depend thereon. The full text of the contract is before us in the pleadings, and its terms are before us in the findings of fact. Clearly, the contract, as written and signed by the parties, is a contract of sale of the mines by the plaintiff to the defendant. The consideration defendant agreed to pay for the whole estate purchased was the sum of $12,500 and an expenditure of $500 for the year 1908 and $1,500 for the year 1909. The amount of the estate to be conveyed to defendant was made by the contract to depend upon the date of payment of the consideration.

When $6,250 had been paid, viz., when the defendant paid $100 at the time of signing the contract and $6,150 when he became satisfied with the title as shown by certain specified

evidence, defendant became entitled to a fifty-one per cent interest in the property as a co-owner. When he had acquired that interest in the property, by the contract he is given option to acquire the remaining forty-nine per cent interest at any time before July 31, 1909, upon a further payment of $6,250; or if he does not exercise his option to purchase such forty-nine per cent interest for said sum of $6,250 on or before said 31st day of July, 1909, he is given an extension of time to December 1, 1910, in which to exercise such option, provided he pay, on or before said 1st day of December, 1910, the sum of $10,000 for such interest. Until he has fully performed his agreement by making all the payments mentioned, he is not entitled to a conveyance of the entire estate in the mines; but, if he makes the payments aggregating $6,250 and expends the $2,000 worth of work on the mines during the years mentioned and elects to exercise his option to purchase no greater interest in the property than the fifty-one per cent, he is then required by the contract to so inform the escrow-holder by delivering to him a deed conveying the forty-nine per cent interest to the plaintiff and receive his deed from the hands of the escrow-holder. If he elects to have his option extended from July 31, 1909, to December 1, 1910, he is given that right, and if he elects to exercise his right to purchase the forty-nine per cent interest during that period by paying the sum of $10,000 to the escrow-holder, he matures his right to receive the deed of conveyance. No provision is made by the terms of the contract for the contingency which is shown to have actually arisen, viz., appellant's failure to pay any further sum; that is, his election to exercise his option and not purchase the remaining forty-nine per cent interest. The contract is silent as to what shall be done in that event. Certainly he is not entitled to receive the deeds conveying the whole title from the escrow-holder. The law supplies this omission, because the record title of the property is in the appellee, and appellant has paid the purchase price of fifty-one per cent interest and been placed in possession, and thereby became a co-owner of the mines with the appellee. He is in the position of a party entitled to enforce a specific performance and receive a conveyance of fifty-one per cent undivided interest in the mines. This is beyond question the construction the parties placed upon their contract, and the terms of

the contract will bear out the construction so placed upon it. Appellee ought to have conveyed said fifty-one per cent interest in the property to the appellant upon demand after the expiration of the period of time given appellant in which to complete his purchase.

The appellee is not liable to repay to appellant any money expended on the property during the years 1908 and 1909, for the reason such expenditure was contemplated by the parties, and appellant was required to expend minimum sums. To require appellee to repay when it had no right to direct the expenditure would be inequitable. The work was prosecuted, doubtless, by the appellant for his information as to the value of the mineral, and the results thus obtained decided his future course of refusing to pay for the remaining interest.

In order to maintain the right to continue in possession of the mines, it was necessary under the law that the owners do the annual representative work for the years 1910, 1911 and 1912. It is in the record that appellee made such expenditure. If such is the case, it is entitled to proceed in a summary manner as provided by law to forfeit to it such interest.

Appellee was entitled to a decree quieting its title to an undivided forty-nine per cent interest in said mines, and appellant was entitled to a decree establishing his title to an undivided fifty-one per cent interest in the mines.

No question is raised by the record of an attempt to exercise any option to purchase after the time limit had expired, or to otherwise vary the terms of the contract, and the question of time, being of the essence, is not in the case to my way of thinking. All matters discussed as to the property lost in litigation have no bearing on the contract further than to explain how the terms of the contract were construed by the parties. The facts are found by the court, but the conclusions of law therefrom are not supported by the facts thus found. The judgment follows the conclusions of law, and it is not supported by the facts. Upon those grounds and for the reasons expressed I concur in the result reached.

---

NOTE.—As to time as the essence of the contract as applied to cases when fluctuations in value are probable, see note in 104 Am. St. Rep. 268.