574 P.2d 457

Kirby ALLAN and Felicienne Allan, his wife, Appellants,

v.

Pamela MARTIN, Individually and as the personal representative of the Estate of George M. Martin, Deceased, Appellee.

No. 13179.

Supreme Court of Arizona, In Division.

Jan. 18, 1978.

Wyles & Gama by Duane Wyles, Phoenix, for appellants.

Skousen, McLaws & Skousen by John Larry McLaws, Mesa, for appellee.

HAYS, Justice.

This case arises from a contract to sell real property. Several claims were set forth in the complaint, answers, and counterclaims which were filed, but we have addressed only the issues relevant to this appeal. Pamela Martin, acting individually and as personal representative of the estate of her late husband, George M. Martin, sued Kirby Allan and his wife, Felicienne, seeking to rescind and cancel the contract and escrow instructions, and to quiet title; damages were also sought. The defendants de-

nied breaching the contract and opposed the rescission and cancellation; defendants also counterclaimed for specific performance.

The jury returned a verdict in favor of plaintiffs rescinding the contract and awarding damages of $1,000. The jury further found against the defendants on their counterclaim.

An appeal to the Court of Appeals was timely perfected, and the Supreme Court has jurisdiction pursuant to 17A A.R.S. Rules of Supreme Court, rule 47(e).

## FACTS

In February, 1974, Kirby Allan approached Mr. and Mrs. Martin and discussed the purchase of the Martin property in Mesa, Arizona. Allan and his wife, both of whom were licensed real estate sales people, wanted to buy the property for themselves. The Martins desired to sell in order to obtain money to complete and move into a home they were building in the mountains. Eventually a sales contract form used by the real estate company for which Kirby Allan worked was signed by the Martins and by Kirby Allan. This contract provided that escrow would close on or before July 31, 1974. Kirby Allan testified that the Martins told him it was very important to them that escrow be closed by July 31. Apparently this was so that the Martins would have time and money available to make their mountain home ready to live in when the cold weather began. Escrow instructions were prepared by a title company and signed by the Allans and the Martins.

The escrow did not close on July 31, but apparently the Martins orally agreed to postpone the closing date by another 15 days. The Martins checked with the title company on August 15 (the last day of the 15-day extension) and discovered that the money necessary to purchase their property still had not been paid into the escrow. Then they sent the following telegram to the Allans: "Due to delay in the sale to you of our home we will no longer sell as the contract expired 7–31–74". Allan testified that he did receive this telegram on August 15.

The next day the Martins signed a "thirteen day letter" which instructed the title company to cancel the escrow if the Allans did not comply with the escrow instructions within thirteen days from the date of the letter. Mrs. Martin testified that it was the Martins' understanding that the purpose of the "thirteen day letter" was merely to cancel the escrow, and that they had already voided the real estate sales contract by the telegram on the previous day. The Allans did comply with the escrow instructions before the end of the thirteen days mentioned in the "thirteen day letter." It is the Allans' contention that by thus complying with the escrow instructions they complied with the contract of sale and, therefore, the Martins must convey the property to them.

## ISSUES

We will not mention specifically every issue raised by appellants because some of the issues overlap and others are irrelevant under the applicable law; however, every issue has been carefully considered.

■ The determinative issue is whether the jury was correctly instructed regarding the law to apply. After reviewing the relevant documents and authorities, we find that this question may be answered affirmatively. A contract to sell real estate and an escrow arrangement are not the same thing. There must exist a binding contract to sell the real estate which is the subject of the escrow, or the escrow instructions are unenforceable. *Young v. Bishop*, 88 Ariz. 140, 353 P.2d 1017 (1960). "[A]n escrow primarily is a conveyancing device designed to carry out the terms of a binding contract of sale previously entered into by the parties." *Young v. Bishop, supra.* Therefore, the escrow instructions are not a part of the underlying real estate sales contract and the terms of the instructions cannot alter or modify the sales contract unless the parties specifically and clearly state such alteration or modification in writing with specific reference to the fact it changes the original contract.

The appellants base their appeal almost entirely upon a fine print form provision in the escrow instructions:

"CANCELLATION:

"16. If either party, who has duly performed hereunder, *elects to cancel these instructions* because of the failure of the other party to comply with any of the terms hereof within the time limits provided herein, said party so electing to cancel shall deliver to Escrow agent a written notice to the other party and Escrow Agent demanding that said other party comply with the terms hereof within thirteen days from the receipt of said notice by Escrow Agent or that these instructions shall thereupon become cancelled." [Emphasis added.]

This term, under the above argument and by its own language, clearly applies only to the procedure for cancelling the escrow instructions; it has nothing to do with how and under what circumstances the real estate sales contract may be rescinded. The time for performance of the contract was the date designated in the contract for the close of escrow. The latest date agreed upon by the parties for close of escrow was August 15, 1974. The sales contract stated that time was of the essence, and appellees informed appellants that the time for the closing of the transaction was very important to them. The latest date for closing was a bargained for term, clearly material in this case. The cancellation provision in the escrow instructions cannot be construed to permit the appellants to perform their contract obligations any later than August 15, 1974.

On August 15 the appellant still had not complied with the sales contract; the money to purchase the property had not been delivered to the escrow agent. When time for performance is material to a contract and one party fails to perform by the contract deadline date, the other party may treat the contract as ended. *See* Corbin on Contracts § 716 (1960); *Phillips and Colby Construction Co. v. Seymour*, 91 U.S. 646, 23 L.Ed. 341 (1875); *Morris v. Prefabrication Engineering Co.*, 160 F.2d 779 (5th Cir.

1947). Thus, when the purchase price was not paid into escrow on the last day agreed upon for closing, the appellees had the legal right to refuse to convey their property and to cancel the contract. They notified appellants that they were exercising this right by the telegram of August 15.

When the appellees exercised their right to treat the contract as ended, the escrow instructions became unenforceable because there was no longer a binding contract to sell the property which was the subject of the escrow. The "thirteen day letter" cancelling the escrow then became only a formality to prove that the escrow was now void. The fact that the quoted provision on cancellation of the escrow instructions gives a party thirteen days to comply with the terms of the escrow does not mean that one may belatedly comply with the breached sales contract when the nonbreaching party has given notice that he elects to treat the contract as ended. Nothing in the escrow instructions can revive an already dead underlying contract. The "thirteen day letter" serves only as a means of terminating the escrow instruction agreement.

Appellants also urge that by signing the "thirteen day letter" appellees elected the escrow cancellation remedy and thus are bound to convey the property because appellants met their obligations under the escrow within the thirteen days. As explained previously, this is incorrect because the escrow was already void at the time the letter was issued and also because the escrow cancellation procedure does not apply to the sales contract.

Having reviewed the jury instructions in light of the applicable law, we find that the jury was correctly instructed. Applying the proper law to the facts in evidence, the jury returned a verdict for appellees and against appellants. This verdict and the judgment are affirmed.

CAMERON, C. J., and GORDON, J., concur.