576 P.2d 1374

**NATIONAL HOUSING INDUSTRIES, INC., a Delaware Corporation, Appellant,**

v.

**E. L. JONES DEVELOPMENT CO., an Arizona Corporation and Collar, Williams & White Engineering, Inc., an Arizona Corporation, Appellees.**

**1 CA–CIV 3296.**

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 31, 1978.

Rehearing Denied March 16, 1978.

Review Denied April 4, 1978.

Snell & Wilmer by Arthur P. Greenfield, Phoenix, for appellant.

Jennings, Strouss & Salmon by Stephen A. Myers, John B. Weldon, Jr., Phoenix, for appellees.

## OPINION

WREN, Judge.

Plaintiff, National Housing Industries (NHI), seeks recovery of damages from the defendant, Collar, Williams & White Engineering, Inc., for alleged negligence and breach of contract in drafting plans and specifications for the design of a residential subdivision, and for the defendant's alleged fraud, misrepresentation and concealment of material facts with respect to the sale of the subdivision to NHI.[1] Summary judgment was entered in favor of the defendant in appealable form pursuant to Rule 54(b), Rules of Civil Procedure, 16 A.R.S. It is from this judgment that plaintiff now appeals.

The factual background begins in the spring of 1971 when E. L. Jones Construction Co. (Jones) retained the defendant, which provides professional consulting engineering services, to prepare a subdivision plat and accompanying paving, sewer, water, drainage and grading plans for the development of a parcel of real property in Maricopa County owned by Jones and known as Greenway Estates No. 4. A portion of the parties' oral agreement was later reduced to writing by a letter dated September 27, 1971, in which the defendant confirmed their earlier understanding. The relevant portions of that letter state:

> "We wish to confirm to you our original verbal proposal pertaining to the Civil Engineering fees for the subdivision . . (Greenway Estates) [.]
>
> Our proposal to you, was to provide the necessary Civil Engineering services normally provided by our firm to plat and stake the subdivision in two units. The costs of all filing fees, construction permit fees, construction inspection fees, soil testing and material testing fees shall be

---

1. Also defending is E. L. Jones Development Co. which is not a party to this appeal. The action below has been continued pending the outcome of this proceeding.

paid for by the Developer directly and are not a part of this agreement."

In December of 1971 negotiations were commenced between NHI and Jones for the sale of the Greenway Estates property to NHI. During the negotiations Jones made available to NHI plats and plans provided by the defendant. On February 8, 1972, Jones executed a purchase agreement which had been drafted by NHI. Under the terms of the agreement Jones agreed to sell the Greenway parcel to NHI for a stated sum. The agreement also provided that Jones had caused the defendant to "do certain work on the Real Property as evidenced by that letter dated September 27, 1971, from [the defendant], a copy of said letter being attached hereto as Exhibit 'A'; . . ." The agreement further stated that "Jones shall assign its position under the agreement with Collar, Williams, & White, Exhibit 'A', to National and National shall assume the obligations of Jones thereunder." There is no evidence that NHI ever attempted to ascertain which services were "normally provided" by the defendant. On March 15, 1972, escrow for the purchase of the property was closed and NHI became the owner of the property.

After closing, in May 1972, NHI discovered that 20,000 cubic yards of fill would have to be imported before houses could be built on the subdivision lots if the subdivision was to be developed according to the defendant's plans and specifications. NHI also learned after the close of escrow that Oscar Temple, the owner of the property directly to the south of the Greenway property, was refusing permission to allow excess surface water to flow onto his land from the project and threatened litigation if the project was developed as planned. The defendant concedes that none of the plans and specifications prepared by it and provided to NHI prior to February 8, 1972, made note of any dispute with Mr. Temple or indicated the need for earth fill importation. However, the record shows that the plats and plans provided NHI contained sufficient information from which a cut and fill estimate could be prepared, and that NHI had employees who could and in fact did prepare such an estimate from the plans prepared by the defendant.

NHI contends its decision to purchase the Greenway property was based on representations that the property was "ready to go" as a subdivision upon which the construction of houses could immediately commence. It further alleges that at the time of sale the property was not in a condition for use as a site for immediate construction of residential dwellings as represented because of the undisclosed earth fill requirements, and because of the "hold" on the paving plans induced by Mr. Temple's refusal to permit drainage onto his property and his threats to sue. Due to these undisclosed matters NHI contends it suffered substantial and unanticipated expenses in rendering the property fit for construction of homes and seeks to recover these expenses from the defendant. NHI's theories of recovery, as stated above, are negligence and breach of contract with respect to the defendant's preparation of plans and specifications for the subdivision, and fraud, misrepresentation and concealment of material facts with respect to representations made during negotiations for the sale of property.

As we understand it, NHI takes two basic positions with respect to its contract and negligence claims. Its first contention is that the defendant "breached its agreement with plaintiff in that [it] did not perform as contracted for, i. e., the plans and specifications were not fit for the intended purpose as rendered and the engineering services provided were insufficient to render the subject property in condition for use as a site for the construction of a residential dwelling project, as represented." The plans were unfit, according to NHI, because they failed to include a cut and fill estimate or to note that fill requirements had not been considered in preparing the plans. Second, it argues the defendant failed to possess or exercise the same skill and care in performing its services as normally possessed or exercised by other engineers in the preparation of subdivision plans and specifications by not submitting a fill estimate or by failing to note fill requirements

had not been considered; by failing to inform NHI the property was not in a suitable condition for constructing a residential dwelling project, and by failing to disclose the "drainage problems" with respect to the property. These failures, NHI contends, proximately caused NHI to incur additional expenses in preparing the property.

In response, the defendant argues that since NHI's contract and tort claims are based on events occurring prior to March 15, 1972, the date of the close of escrow, NHI is not entitled to recover. It contends that prior to this date there was no privity of contract between itself and NHI and that it owed no duty of due care to NHI and therefore NHI is entitled to no legal relief. NHI counters by arguing that privity of contract arose between the parties on February 8, 1972, the effective date of the purchase agreement; and further, with respect to its negligence claim, that defendant owed a duty of due care in performing its services to anyone who might use its subdivision plans. We find it unnecessary to determine the point in time contractual privity arose between the parties or the time at which defendant owed a duty of due care to NHI, since NHI failed to establish that a genuine issue of material fact existed as to whether the defendant breached its engineering contract or was negligent in performing its engineering services.

■ We first turn to the controlling legal principles. When seeking summary judgment the moving party has the burden of proving the absence of a genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *Elerick v. Rocklin*, 102 Ariz. 78, 425 P.2d 103 (1967). Where, however, he makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the opposing party to produce sufficient competent evidence to show there is an issue, and it must demonstrate that evidence is available to justify trial on the issue. *Dobson v. Grand International Brotherhood of Locomotive Engineers*, 101 Ariz. 501, 421 P.2d 520 (1966); *Robbins Investment Co. v. Green Rose Associates, Inc.*, 8 Ariz.App.

596, 448 P.2d 440 (1969). The duty of an engineer, whether based in tort or arising from a breach of contract, is to exercise the degree of skill, care, and diligence as engineers ordinarily exercise under like circumstances. *See Kostohryz v. McGuire*, 298 Minn. 513, 212 N.W.2d 850 (1973). Ordinarily, a determination that this standard has not been met and that damage was incurred as a result of a deviation therefrom must be based on expert testimony establishing the prevailing standard and the consequences of departing from it in the case under consideration. *City of Eveleth v. Ruble*, 302 Minn. 249, 225 N.W.2d 521 (1974). *Cf. Rice v. Tissaw*, 57 Ariz. 230, 112 P.2d 866 (1941).

■ In the case before us defendant produced the deposition testimony of its expert, Joseph Beatty, a registered civil engineer in the State of Arizona. Mr. Beatty testified that the standard of care practiced in Phoenix did not include computation of cut and fill estimates as part of the standard engineering fee for designing a subdevelopment. This testimony was corroborated by the deposition testimony of E. L. Jones, president of E. L. Jones Development Co., who stated that the contract he entered on behalf of Jones with the defendant did not contemplate that the defendant would prepare cut and fill estimates and that such estimates would not be provided unless specifically requested. By this testimony the defendant satisfied its burden of making a prima facie showing that there were no genuine issues as to the standard of care with respect to preparing cut and fill estimates and the lack of defendant's deviation therefrom. At this point it became incumbent upon NHI to come forward with proof that sufficient evidence was available to create an issue of fact and to justify trial on this issue. To satisfy this burden NHI relies on the deposition testimony of Thomas McCorquodale, a former employee of NHI. Mr. McCorquodale's testimony was offered as opinion evidence based upon his expert knowledge as an experienced supervisor of subdivision developments. He stated that in the absence of a cut and fill estimate he felt he was entitled

378

to assume there were no cut and fill requirements. But it is questionable that Mr. McCorquodale was qualified to testify as an expert. He was not an engineer and his testimony reflected that his only experience with engineering firms in planning a subdivision, prior to his dealings with defendant, was with one engineering firm. However, even if it was conceded that a person in the position of Mr. McCorquodale was qualified to give an expert opinion with respect to this aspect of the case, it is clear that no adequate foundation was laid by counsel for him to testify as an expert. He was not asked and did not testify with respect to the standard of practice in the engineering industry regarding the preparation of cut and fill estimates as part of the service performed for a standard engineering fee in preparing plans for a subdivision. *Compare City of Phoenix v. Mubarek Ali Khan*, 72 Ariz. 1, 229 P.2d 949 (1951). We hold that this testimony failed, as a matter of law, to raise an issue of fact as to the standard engineering practices with respect to preparing cut and fill estimates or that defendant, in failing to prepare such estimates, failed to exercise the degree of skill and care normally exercised by engineers in performing services such as those undertaken in this case. Summary judgment in favor of the defendant on these issues was therefore proper.

██ Alternatively, if plaintiff's position is that the custom, in situations as the one with which we are concerned, was that the engineer preparing the subdivision plans would also prepare a cut and fill estimate, NHI's evidence has failed to raise an issue of fact with respect to custom. It is true that a professional custom within a particular geographic area may be used to establish the terms of a contract. Restatement of Contracts, § 246(b) (1932). Normally, whether a custom is so well established as to justify an expectation that it will be observed with respect to a particular transaction is a question of fact. *Cf.* Restatement of Contracts, §§ 247, 248 (1932). There was, however, no testimony offered that the preparation of cut and fill estimates was customary under contracts such

as the one now under consideration and therefore no question of fact was created as to whether NHI justifiably assumed that the absence of a notation with respect to fill requirements meant there were no fill requirements.

NHI also claims the defendant breached its contractual obligations and duty of due care by failing to disclose, prior to execution of the sales agreement and the close of escrow, the existence of "drainage problems" with respect to the subdivision. After the close of escrow NHI learned that Mr. Temple was threatening to institute suit against the City of Phoenix and NHI if the Greenway project was developed as planned and that the City had placed a "hold" on the project paving plans which prevented the issuance of permits pursuant to those plans. NHI contends the "hold" was placed on the plans as a result of Temple's threats and appears to contend the threats and "hold" occurred prior to its execution of the sales agreement with Jones.

The record indicates that prior to its approval of the final plat for the Greenway No. 4 project, the Phoenix City Council required "that an attempt be made to obtain drainage easements across the property to the south . . . or a letter from the property owner [to the south] agreeing to accept the flood waters from those streets [of the proposed Greenway development]." Pursuant to this requirement E. L. Jones spoke with Temple who refused to grant an easement or to sign a letter of consent with respect to flood waters. By letter Jones informed the defendant of the result of his conversation with Temple and indicated that while no letter or grant of easement would be forthcoming, Temple had no objection to the development of the property as planned. Mr. Jones testified that Temple made no threats as to litigation or self-help to prevent water from the Greenway project from flowing onto his land. The City also was informed of Temple's refusal. Nevertheless, the paving plans were approved by the City Engineer's office on November 23, 1971 and on December 21,

1971 the City Council unanimously approved the final subdivision plat for Greenway Estates No. 4.

█ Nothing in the record controverts these bare facts. There was no evidence presented that the "hold" was placed on the paving plans prior to the execution of the sales agreement on February 8, 1972; that the "hold" was related to Temple's objections to the project prior to this date, or that the defendant had any knowledge of drainage "problems" prior to the execution of the sales agreement. On the contrary the evidence indicates that Mr. Temple made his threats known to the parties, after March 15, 1972, the date of the close of escrow. Absent evidence that the "hold" or Temple's threats occurred prior to February 8, 1972, no issue arose with respect to defendant's duty to disclose these matters to NHI prior to that date since there was no evidence that they had occurred at this point in time.

NHI's final theory for recovery is that the defendant made fraudulent representations and fraudulently or negligently failed to disclose material facts regarding the subdivision during the negotiations between the plaintiff and Jones for the sale of the property. The record is devoid of any evidence suggesting defendant made any misrepresentations during the negotiation period and NHI conceded during oral argument before this Court that it no longer claims defendant made affirmative misrepresentations. It continues to argue, however, that defendant's failure to disclose that the Greenway site was not "ready to go," as allegedly represented by Jones, was fraudulent and negligent as to NHI.

Its specific complaints are directed to an estimate for offsite improvements, prepared by defendant and dated March 14, 1972, which did not disclose cut and fill requirements and to defendant's failure to inform NHI the subdivision was not "ready to go" because of the undisclosed fill requirements, Mr. Temple's refusal to allow drainage onto his property and the City's "hold" on the subdivision drainage plans.

█ Actionable fraud may be committed by concealing a material fact which one is, under the circumstances, obligated to disclose. *Dunahay v. Struzik*, 96 Ariz. 246, 393 P.2d 930 (1964); *Leigh v. Loyd*, 74 Ariz. 84, 244 P.2d 356 (1952). Whether a duty to speak exists is determined by reference to all of the circumstances of the case. 37 Am.Jur.2d, Fraud and Deceit, § 146 (1968); *Vokes v. Arthur Murray, Inc.*, 212 So.2d 906, 28 A.L.R.3rd 1405 (Fla.App.1968).

"A party of whom inquiry is made concerning the facts involved in a transaction must not, . . . conceal or fail to disclose any pertinent or material information in replying thereto, or he will be chargeable with fraud." 37 Am. Jur.2d, Fraud and Deceit, § 150, pp. 207–08 (1968).

Arizona also recognizes a cause of action may exist for negligent misrepresentation. *See Van Buren v. Pima Community College District Board*, 113 Ariz. 85, 546 P.2d 821 (1976); *Arizona Title Insurance and Trust Company v. O'Malley Lumber Company*, 14 Ariz.App. 486, 484 P.2d 639 (1971); Restatement of Torts, § 552 (1977).

█ In this case NHI premises its right to recovery under both the fraud and negligence theories on the defendant's alleged knowledge that Jones allegedly and falsely represented to NHI the property was "ready to go." Assuming Jones made this representation, that it was false, and that if the defendant knew of it it would have been under a duty to disclose its falsity, there is no evidence whatsoever that the defendant did know of any representations made by Jones as to the readiness of the subdivision for development. NHI has presented no evidence that any representative of the defendant participated in any negotiations for the sale of this property in which fraudulent representations were made. Further, no evidence was presented that the defendant was informed of any misrepresentations with respect to the purchase of the property. In view of NHI's failure to produce evidence of the defendant's knowledge of alleged misrepresentations made by Jones during the negotiations for the sale of the property, we hold no

**380**

duty arose on the part of the defendant to disclose facts to correct the alleged misrepresentations. For this reason, we hold that the court's entry of summary judgment in favor of the defendant on these issues was proper.

Judgment affirmed.

JACOBSON, Acting P. J., and NELSON, J., concurring.