596 P.2d 41

**Jennie SCOPELLITE and Jack Scopellite, wife and husband, Plaintiffs-Appellants,**

v.

**Charles W. NEEDHAM and Constanca Needham, husband and wife, Defendants-Appellees.**

**No. 2 CA–CIV 3120.**

Court of Appeals of Arizona, Division 2.

March 29, 1979.

Rehearing Denied May 16, 1979.

Review Denied June 5, 1979.

Darrel G. Brown, Tucson, for plaintiffs-appellants.

Chandler, Tullar, Udall & Redhair by D. B. Udall, Tucson, for defendants-appellees.

OPINION

HOWARD, Judge.

On March 11, 1977, appellants filed a medical malpractice action against Dr. Needham. Although they did not plead in separate counts, appellants alleged that in 1975 Dr. Needham removed a portion of the skull of Jennie Scopellite for the purpose of examining it and that in so doing Dr. Needham (1) was negligent in performing the operation, (2) did not obtain the informed consent of the patient and (3) did not perform the operation in the area where he told the patient it would be done.

After appellees answered, a medical liability review panel was appointed and a hearing held, which resulted in a decision in favor of the doctor. Dr. Needham moved for summary judgment on the basis of the panel's decision. He also contended in the motion that appellants did not have any expert testimony to support the claim that he was guilty of malpractice and that this malpractice caused an injury.

In opposing the motion, appellants relied on the deposition of Dr. Edward Brucker, a pathologist, affidavits of Mrs. Scopellite and a drawing. Dr. Brucker's deposition reveals that Dr. Needham had removed a piece of Mrs. Scopellite's skull for a bone biopsy. The amount of bone removed was 7.5 centimeters by 6 centimeters. (It was later replaced with a plastic plate.) Dr. Brucker testified that the average amount of bone taken in such cases is one to two

square centimeters and one square centimeter would have been adequate here. In his opinion the amount of bone removed by Dr. Needham was a gross departure from the standard of care in the field of neurosurgery. The drawing attached to appellants' opposition is a tracing from Mrs. Scopellite's x-ray, showing part of her skull and the area of bone removed. The drawing also shows areas of one square centimeter and two square centimeters, for a comparison with the area actually removed.

In one of her affidavits, Mrs. Scopellite describes the effect of the operation on her:

". . . ever since the operation was performed to remove a portion of her skull, she has had pain through the entire area where the skull was removed and the acrylic plate attached; that the entire perimeter of the removed area is often-times sore; that the entire area is tender and oftentimes it is difficult for her to lie on a pillow on the side where the bone was removed and sometimes she cannot lie on that side at all. That she must be very careful in combing her hair over the area where the scalp covers the acrylic plate, as it is very tender. That she is also concerned about an object hitting her on the side of the head where only the plate can protect her brain from injury."

In her other affidavit, Mrs. Scopellite stated that prior to the operation Dr. Needham told her that he was going to remove a small sample of bone from the back of her head. She authorized him to proceed in this manner but never authorized him to remove bone from any other portion of her head. Nor did she ever authorize him to remove any bone except a small portion. She stated that when she discovered the size of the portion of bone removed from her head she was stunned and shocked. She also stated that approximately two years after the operation a piece of wire used by Dr. Needham to hold the plate in place became loose and pushed against her skin, causing it to be tender. A plastic surgeon opened the wound and bent the wire back. Subsequently the wire again pushed against the skin causing irritation. The plastic surgeon advised her that she needed the services of a neurosurgeon to treat her condition.

It is clear that summary judgment should not have been granted. The burden here was on Dr. Needham to prove the absence of a genuine issue as to any material fact and that he was entitled to judgment as a matter of law. *National Housing Industries, Inc. v. E. L. Jones Development Co.,* 118 Ariz. 374, 576 P.2d 1374 (App.1978). What did Dr. Needham prove on the issue of lack of informed consent [1] and battery? He offered only the decision of the review panel.

A.R.S. Sec. 12–562(B) provides that no medical malpractice action brought against a licensed health care provider shall be based upon assault and battery. The review panel had no jurisdiction relative to such a claim, not only because of the statute itself, but also because the statute does not apply to a claim which accrued in 1975. *Cathemer v. Hunter,* 27 Ariz.App. 780, 558 P.2d 975 (1976). Thus, Dr. Needham presented nothing on the issue of the lack of informed consent and battery; therefore, he did not sustain his burden of proof on summary judgment.

As for the balance of the alleged medical malpractice, the deposition of Dr. Brucker establishes the negligence and the affidavit of Mrs. Scopellite establishes an injury from the alleged malpractice. The logical inference from her affidavit is that if the amount of bone taken had been one or two square centimeters instead of the large piece that was extracted, she would not be experiencing the difficulties of which she complains.

Reversed.

RICHMOND, C. J., and HATHAWAY, J., concur.

---

1. If a doctor operates without his patient's consent, he has committed a battery. *Riedisser v. Nelson,* 111 Ariz. 542, 534 P.2d 1052 (1975).