626 P.2d 126

**Chris J. ANGLE and Sue Ellen Angle, husband and wife, Appellants,**

v.

**MARCO BUILDERS, INC., an Arizona Corporation; Gene H. Ashton and Jane Doe Ashton, his wife; Keith Morris and Jane Doe Morris, his wife; Lawyers Title of Arizona, an Arizona Corporation, Appellees.**

No. 14693.

Supreme Court of Arizona, In Division.

Feb. 26, 1981.

Udall, Shumway, Blackhurst, Allen, Bentley & Lyons by Barry C. Dickerson and Clark R. Richter, Mesa, for appellants.

Morris & Walker by Dan R. Morris, Phoenix, for appellees.

HAYS, Justice.

This appeal arises out of the nonperformance of a real estate purchase contract. We take jurisdiction pursuant to 17A A.R.S. Rules of Civil Appellate Procedure, rule 19(e). The order of the trial court granting summary judgment for Marco Builders, Inc., defendant-appellee, is reversed and we remand this case for a trial on the merits consistent with this opinion. After construing the facts from the record in a light most favorable to the Angles, the party opposing the ruling granting the motion for summary judgment, *Arizona Coffee Shops, Inc. v. Phoenix Downtown Park Association*, 95 Ariz. 98, 387 P.2d 801 (1963), we find there are disputed facts which must be resolved.

Chris and Sue Ellen Angle contracted to purchase a lot, together with a house to be constructed thereon by Marco Builders, Inc., located at 245 South Cholla, Gilbert, Arizona. Appellants were to qualify for a new FHA 235 loan and pay the purchase price of $29,850.00. The date for the final qualification of appellants and for Marco Builders to complete the home is disputed. The appellants did eventually qualify for the FHA 235 loan on January 6, 1978, while construction on the home was never begun. The Angles now seek recovery for loss of their bargain on the contracted-for home. The critical events and dates derived from the limited testimony at a hearing for a temporary restraining order and from the documents in evidence are chronologically listed to better present the time spans which were important in our determination that genuine issues of material fact exist.

| Date | Event |
|------|-------|
| 9–24–77 | Real Estate Purchase Contract submitted by Angles to Marco Builders; Angles deposited $200 earnest money. |
| 9–28–77 | FHA opened file on Angles loan. |
| 9–29–77 | Escrow Instructions prepared. |
| 9–30–77 | Real Estate Purchase Contract signed by Marco's president. |
| 10–31–77 | Conditional Commitment given by FHA; Marco was mailed shortly hereafter and requested to sign a buyer-seller broker verification letter. |
| 12–7–77 | Loan was submitted to FHA for final approval based on Angles' credit application. |
| 12–12–77 | FHA suspended the file due to lack of information on stability of employment. |
| 1–4–78 | Angles' file resubmitted to FHA with a letter supplied by Angle's employer; escrow agent received 13-day cancellation demand notice from Marco Builders, which was not in correct form. |
| 1–6–78 | FHA firm commitment issued on Angles' loan. |
| 1–9–78 | Marco resubmitted cancellation notice to escrow agent, this time on the proper form. |
| 1–13–78 | Escrow agent mailed 13-day cancellation-of-escrow letter to the Angles. |
| 1–24–78 | Complaint filed by Angles and two other prospective purchasers of Marco Builders homes; Angles alleged their readiness, willingness and ability to perform; testimony begins at the hearing on the temporary restraining order. |
| 1–25–78 | Testimony continues at hearing. |
| 1–26–78 | Testimony continues. |

The heart of the parties' problem is found in the following provisions. The provision in the *Real Estate Purchase Contract and Receipt for Deposit* reads in pertinent part:

"LOT # 115 OLD WEST ESTATES # 2 (AKA) 245 S. CHOLLA, GILBERT, ARIZ. MODEL # 1101 TO BE CONSTRUCTED BY MARCO CO.

. . . .

"TERMS AND CONDITIONS OF THE OFFER PAYABLE AS FOLLOWS: As consideration, the Purchaser agrees to purchase the above described real property for the full purchase price of TWENTY-NINE THOUSAND EIGHT-HUNDRED-FIFTY no/100 dollars. $29,850.00 full purchase price payable as follows: $200.00 earnest deposit as indicated above. PAYABLE TO LAWYERS TITLE Chk. # 146 Additional earnest deposit upon acceptance, or $1,400.00 DOWN PAYMENT ON OR BEFORE C.O.E. $28,250.00 MTG. TO BE SECURED BY A[N] F.H.A. 235 INSURED LOAN. CONTRACTORS RESERVATION # 265–328. BUYERS & SELLERS EACH TO PAY NORMAL CLOSING COST. Buyers to slect [sic] colors & ELEVATION—within builders allowance.

. . . .

ESCROW, PRORATIONS, POSSESSION: Seller and Purchaser agree to close escrow and to prorate the taxes . . . C.O.E. *about* JAN 1978 . . . Possession of the above described premises is to be delivered to the Purchaser on or before CLOSE OF ESCROW *about* JAN. 1978."

The provision in the *Escrow Instructions* in part reads:

"[H]ereby employ Lawyers Title of Arizona as Escrow Agent . . . upon the following terms and conditions which shall be complied with by said parties on or before January 1, 1978 or as soon thereafter as possible unless a demand for cancellation has been made on Escrow Agent as herein provided . . .

| | |
|---|---|
| PURCHASE PRICE to be paid by Buyer Which is represented by: | $29,850.00 |
| EARNEST MONEY TO BE DEPOSITED IN ESCROW hewewith [sic] | $ 200.00 |
| CASH PAYMENT TO BE DEPOSITED IN ESCROW On or before close of escrow | $ 1,400.00 |

. . . .

| | |
|---|---|
| BALANCE OF To be evidenced by New FHA 235 payable as follows: | 28,250.00 |

This escrow is contingent upon Buyer qualifying for a new FHA 235 Loan through MARGARETTEN and COMPANY INC. All costs for securing the loan to be paid by the Buyer except for Discount points and any other fees which FHA requires Seller to pay.

Model # 11.01 to be constructed by Marco Builders. Buyer to select colors and elevation within Builders allowance.

. . . .

*SELLER:*

1. Will deliver to Escrow Agent a deed of the property from Seller to Buyer to be held by Escrow Agent until the terms hereof have been performed, at which time it shall deliver said deed to Buyer."

■ To resolve which date is that contemplated for completion of performance, we must first set forth the relationship of the escrow instructions to the real estate contract. In *Allan v. Martin,* 117 Ariz. 591, 592, 574 P.2d 457, 458 (1978), we described this relationship as follows:

"A contract to sell real estate and an escrow arrangement are not the same thing. There must exist a binding contract to sell the real estate which is the subject of the escrow, or the escrow instructions are unenforceable. *Young v. Bishop,* 88 Ariz. 140, 353 P.2d 1017 (1960). '[A]n escrow primarily is a conveyancing device designed to carry out the terms of a binding contract of sale previously entered into by the parties.' *Young v. Bishop, supra.* Therefore, the escrow instructions are not a part of the underlying real estate sales contract and the terms of the instructions cannot alter or modify the sales contract unless the parties specifically and clearly state such alteration or modification in writing with specific reference to the fact it changes the original contract."

Appellees urge that here the escrow instructions do not modify the sales contract date of "about January 1978," but merely clarify the date to "on or about January 1, 1978 or as soon thereafter as possible." In support of their argument appellees cite a California decision, *Katemis v. Westerlind,* 120 Cal.App.2d 537, 261 P.2d 553 (Ct.App. 1953), where the court reasoned that "both instruments must be construed together in ascertaining the contracting parties' understanding when terms of an executory sales contract are clarified or elucidated by escrow instructions." The purchase contract

is not merely clarified but is altered by applying the escrow instructions. This is contrary to *Allan, supra.* We hold that the most reasonable interpretation of the purchase contract date of "about January 1978," is that completion by January 31, 1978 was the contracted-for performance, despite the contrary date in the escrow instructions.

■ As a matter of law, it does not appear that the contract for sale between the parties was expressly conditioned on completion of the escrow instructions by January 1, 1978. *Young v. Bishop, supra,* 88 Ariz. at 147, 353 P.2d at 1022. A suit to enforce an escrow agreement is not identical with this suit for damages for loss of the benefit of the bargain as a result of appellees alleged ultimate repudiation of the contract by not constructing the home as required by the enforceable sales contract.

■ There is no language in the purchase contract specifying the time and order in which the parties were to individually perform. Where no specific time is stated for performance, we imply a reasonable time. What is a reasonable time for the Angles to qualify for the FHA loan will depend upon the legal interpretation given to the conditional provisions of the sales contract. Appellees contend that receipt of a firm commitment from FHA was a condition precedent to their obligation to begin construction of the Angle model # 1101 home; that it would be unreasonable to interpret the sales contract to mean that Marco Builders had only from January 6, the date the Angles qualified, to January 31 to construct the house; that if the contract is so interpreted, Marco urges that their performance was rendered impossible.

■ Generally, a construction of provisions as conditions precedent is not favored when construing conditional provisions in a contract. As has been simply worded in 17 Am.Jur.2d *Contracts* § 321 (1964):

"The parties are at liberty to agree upon a condition precedent upon which their liability shall depend. However, the rule is that to make a provision in a contract a

condition precedent, it must appear from the contract itself that the parties intended the provision so to operate . . . It has been said that conditions precedent are not favored and the courts will not construe stipulations to be such unless required to do so by plain, unambiguous language or by necessary implication." Nowhere in the sales contract is there language which clearly creates a condition precedent. The contract reads, "model *to be constructed*" and "mtg. *to be secured* by a FHA 235 insured loan." (Emphasis added). The date by which these conditions are to be performed is not specified. Appellees assert in their brief which describes the various FHA procedures at length and in argument of counsel, that the Angles knew that construction would not begin until a firm commitment by FHA was received. This does not constitute evidence upon which summary judgment can be based. The testimonial evidence elicited from the appellants at the temporary restraining order hearing showed they did not understand that their FHA qualification was intended to totally precede Marco Builders construction of the home:

> "[A] court can admit evidence of the surrounding circumstances, including party admissions, negotiations and communications, to resolve a dispute as to whether one party had notice of the meaning given to the contract by the other, without violating the parol evidence rule. Corbin on Contracts § 543 (Kaufman Supp., 1980). *Brady v. Black Mountain Investment Co.*, 105 Ariz. 87, 459 P.2d 712, 715 (1969)."

Appellees failed to show at the hearing that at the time of contracting the Angles had any knowledge or understanding of the FHA procedures and their purported imposition of a condition precedent.

Appellants claim they understood the contract to mean that the delivery of the deed by Marco Builders and their payment of the purchase price were dependent and concurrent conditions. Therefore, they argue, the vendor, Marco, could not place the vendee in default unless the vendor was able to perform or tender a conveyance of the deed (see provision in escrow instructions above) which Marco never did. Several cases from numerous jurisdictions are cited by appellants as authority for this proposition. This rule is enunciated by the Arizona Court of Appeals in *McFadden v. Wilder*, 6 Ariz.App. 60, 63–64, 429 P.2d 694, 697–98 (1967). The court held that the requirement in the escrow instructions to deposit the satisfaction of mortgage was a condition precedent, as was the duty to deliver marketable title, and,

> "[w]hen each party to a transaction is subject to mutual conditions precedent, then these mutual conditions are concurrent conditions. 17 Am.Jur.2d, "Contracts" § 321; Restatement Contracts § 351. * * * The duty to comply with one of the concurrent conditions would not arise until there was a tender of the performance of the other condition. Williston, Contracts, 3d Ed. § 666A."

Appellees point out that the factual situations of all the cases cited by appellants are dissimilar since they deal with the sale of raw property or property already developed with completed buildings thereon. Marco urges that an interrelated procedure for FHA qualifying, involving both parties, is the custom of the trade and that pursuant to this custom the builder does not begin construction until a firm commitment from FHA is received. In *National Housing Industries v. E. L. Jones Development Co.*, 118 Ariz. 374, 576 P.2d 1374 (App.1978), the defendant engineers contended and established through competent testimony that the "normally provided" service for which the plaintiff had contracted did not include cut-and-fill estimates as a matter of course. The Court of Appeals addressed the issue of custom and usage, raised by the plaintiff, National Housing Industries, as follows:

> "It is true that a professional custom within a particular geographic area may be used to establish the terms of a contract. Restatement of Contracts § 246(b) (1932). Normally, whether a custom is so well established as to justify an expectation that it will be observed with respect

to a particular transaction is a question of fact. *Cf.* Restatement of Contracts §§ 247, 248 (1932). There was, however, no testimony offered that the preparation of cut and fill estimates was customary under contracts as the one now under consideration and therefore no question of fact was created as to whether NHI justifiably assumed that the absence of a notation with respect to fill requirements meant there were no fill requirements." *Id.,* at 378, 576 P.2d at 1378.

*See also Sam Levitz Furniture Co. v. Safeway Stores, Inc.,* 105 Ariz. 329, 464 P.2d 612 (1970). No testimony on the FHA procedures was introduced by Marco Builders at the temporary restraining order hearing. Only a lengthy recitation of such procedures is found in their brief and in argument of counsel, neither of which constitutes competent evidence. Appellants called Mr. Biggs, the supervisory appraiser of HUD, who described the FHA time sequences, but he did not relate whether FHA qualification procedures usually occur concurrently with or precede the construction of homes. There is insufficient evidence to prove the custom of the trade and no evidence that the Angles had actual knowledge of such procedures and that they contracted with reference to them.

If, at trial, appellees succeed in these proofs, additional evidence of the possibility of Marco Builders having waived the condition precedent of the Angles' qualifying at some time prior to January 6, should also be assessed. If the time contemplated by the parties for performance went to the essence of the contract (the contract contained a typical form clause stating time to be of the essence), then the failure of appellants to qualify earlier would have operated to discharge Marco of performance, although the failure would not have constituted a breach of contract by appellants. *See* Corbin on Contracts § 634 (1960). And even if the contract so prescribes that time is of the essence, this cryptic form provision may be waived by the mere expression of assent to waiver. Usually, though, where assent is found, it constitutes more than silence; there are usually circumstances accompany-

ing such silence that are evidence of the vendor's intention to waive the condition or that now raise an estoppel against him. Corbin on Contracts §§ 716, 754 (1960). In *Bennie v. Becker-Franz Co.,* 14 Ariz. 580, 134 P. 280 (1913), we held that where a contract contains a standard time-is-of-the-essence provision, the conduct of the parties may indicate that the requirement of prompt performance has been waived. Even from the limited evidence before us, appellants' claim that the parties considered time of qualification of the essence appears to be inconsistent with Marco's conduct, but the presence of waiver must be left to the trial court's determination. *See Loper v. O'Rourke,* 86 Misc.2d 441, 382 N.Y.S.2d 663 (1976), *noted in,* the Supreme Court, Appellate Division, 2d Department, *Avendanio v. Marcantonio,* 75 App.Div.2d 796, 427 N.Y. S.2d 512 (1980). In *Loper,* the conditional commitment from FHA was issued within the 45-day period, but the firm commitment was not issued until 25 days after the 45-day period had passed. The court held that plaintiff's actions in accepting the conditional mortgage commitment, proceeding to accept the firm commitment, and scheduling the closing, all indicated an intent to treat the contract effective beyond the 45-day period.

Appellees assert that they are justified to refusing to perform the contract because appellants have never performed by tendering the purchase price. The trial judge made an erroneous finding of fact at the hearing on the temporary restraining order that plaintiffs did not qualify "as required in the contract until after the notice of noncompliance was filed by defendants and sent to the plaintiffs," and that "plaintiffs did not comply because they did not deposit the down payments required to be deposited in escrow by January 1, 1978." This partially led to the incorrect granting of summary judgment for Marco. If we refer to the chronological list of transactions, above, it is clear that the Angles qualified on the 6th of January and the noncompliance letter was not *sent* until the 13th of January. Also, the Angles sufficiently tendered pay-

ment by the time as determined by this court, January 31, 1978, for close of escrow. The Angles deposited $200 earnest money on September 24, 1978. On January 6, 1978 they had received a firm commitment by FHA for $28,250.00. The remaining $1,400.00 down payment had not yet been deposited in escrow because escrow had not yet closed. Actual tender becomes unnecessary where it would have been a futile act, as here, where appellees could not concurrently tender performance by conveying the deed since no house had yet been constructed. Furthermore, where the purchaser is ready, willing and has offered to perform but the vendor refuses purchaser's offer, the tender of purchase price is unnecessary to put vendor in breach. *Kammert Brothers Enterprises, Inc. v. Tanque Verde Plaza Co.*, 102 Ariz. 301, 428 P.2d 678 (1967); *Ceizyk v. Goar Service & Supply, Inc.*, 21 Ariz. App. 119, 516 P.2d 61 (1973).

The Angles tendered performance by alleging in their complaint their readiness, willingness and ability to pay the purchase price. This tender was made upon the filing of the complaint on January 24, 1978. At the hearing on January 25, 1978, the Angles attested to their ability to pay the purchase price and to fully perform the terms of the purchase contract. In *Lee v. Nichols*, 81 Ariz. 106, 110–11, 301 P.2d 1022, 1024 (1956), the court upheld the sufficiency of plaintiffs' tender via their filed complaint, stating:

> "When the complaint was filed with the offer of performance by plaintiff and this offer was not accepted by the defendants, the plaintiff was under no obligation to continue making payments . . . .
>
> . . . .
>
> "Plaintiff's sworn complaint alleging full compliance required a trial to determine this fact and to determine the validity of defendants' claimed cancellation of plaintiff's interest."

On review, we find that the granting of summary judgment was not based on sufficient competent evidence and that substantial issues of material fact exist. We re-verse and remand for further proceedings consistent herewith.

HOLOHAN, V. C. J., and CAMERON, J., concur.