[Civil No. 3796. Filed June 7, 1937.]

[68 Pac. (2d) 957.]

FRED B. HOUGHTON, JR., Appellant, v. MAMMOTH ARIZONA GOLD MINING COMPANY, a Corporation, and FRED BOSE, Sometimes Known as F. W. BOSE, Appellees.

Messrs. Fulbright & Reed, for Appellant.

Messrs. Knapp, Boyle & Thompson, for Appellee Mining Company.

ROSS, J.—The Mammoth Arizona Gold Mining Company brought suit on June 3, 1933, to compel defendant Fred Bose to convey to it all his right, title, and interest in the New Year and Gulch mining claims, situate in the Old Hat mining district, Pinal county, as per his contract of date April 21, 1930, with Fred B. Houghton, Jr., plaintiff's assignor. It was a suit to compel specific performance of a contract to sell mining claims.

Bose filed an answer contesting plaintiff's right to have conveyance on the ground of failure to make payments as called for by the contract. Later, while the suit was still pending and on or about April 23, 1934, he accepted from plaintiff the unpaid balance of the agreed purchase price and by quitclaim deed conveyed all his right, title, and interest in mines to the plaintiff, which, of course, very effectively disposed of the

latter's suit and admitted its right to specific performance as against Bose.

The controversy then became one between plaintiff and Houghton, who, under permission of the court first obtained, on September 6, 1935, as intervener, filed his third amended answer to plaintiff's complaint, wherein he, in substance, set out that the plaintiff for failure to make payments to Bose at the times and in the amounts stipulated, especially the sum of $13,250 on May 2, 1932, had forfeited its right to specific performance and that he, under the terms of his assignment to the plaintiff, had succeeded to or become subrogated to such right. He prays that the deed from Bose to the plaintiff be declared null and void; that the option contract of April 21, 1930, with modifications and extensions, be declared in full force and effect; and that Bose be directed to execute to him a deed conveying title to mines and place the same in escrow subject to such contract, its modifications and extensions, and for other equitable relief. Thus it is that the intervener now is the one asking that Bose be required to perform with him the contract of April 21, 1930, and its modifications and extensions, and that the deed he had given to the plaintiff under said contract be declared null and void. Bose failed to answer intervener's pleading, but the plaintiff filed a reply which put in issue its allegations. Under the issues, the court required the intervener Houghton to assume the burden of proof and thereupon he submitted his evidence and rested. The plaintiff then moved for judgment and the motion being granted, the intervener appeals.

The intervener, in support of his case, introduced in evidence the option contract from Bose to him of April 21, 1930, granting to him the exclusive right and option to purchase the mining claims, "to continue so long as" he performs the considerations and cove-

nants therein, that is, pay to him or to his credit in a named bank the sum of $17,850, as follows: $50 per month until June 2, 1931; $1,000 June 2, 1930; $1,000 December 2, 1930; and the sum of $15,250 June 2, 1931.

This contract gives to intervener or his assigns the exclusive right to the use, occupancy, and possession of said mining property; the right to erect and maintain machinery and improvements thereon for mining purposes and the right to remove the same in case of forfeiture or termination of the option; provides for three-eighths of 12½ per cent. of the net smelter returns of any ores, minerals, etc., shipped and disposed of, to be applied on purchase price; provides for the annual assessment work to be done by intervener or his assigns, and for failure to make payments on purchase price as provided, or to do assessment work, or to pay over smelter returns, etc., the option to at once become null and void and all moneys paid by intervener or his assigns to be and remain the property of Bose as liquidated damages.

Intervener also introduced an agreement between himself and Bose, dated December 5, 1930, changing the dates of payments as follows: $1,000 on June 2, 1931, instead of $15,250 due on that date; $1,000 on December 2, 1931; and the balance of $13,250 on June 2, 1932.

He also introduced in evidence his assignment to plaintiff of his option contract of April 21st as modified, such instrument bearing date December 29, 1930, wherein intervener, for the sum of $1 and 300,000 shares of the plaintiff's fully paid and nonassessable capital stock and other good and sufficient consideration, assigned all his right in the option to purchase mining claims to plaintiff "to continue so long as the said party of the second part (plaintiff) shall perform the considerations and covenants hereinafter set forth." This instrument sets out the dates of the

monthly and other payments under the option contract and recites that "whereas, time is an essence of this agreement," the plaintiff shall make payments to the credit of Bose thirty days in advance of due dates under option contract so that the last payment of $13,250 will become due on May 2, 1932, instead of June 2, 1932, and for failure to make payments in the amounts and on the dates set forth, the assignment shall at once become null and void and any and all money theretofore paid shall belong to Bose as liquidated damages with no liability on the intervener. It also provides that,

"In the event of the annullment of this assignment, the said party of the second part, and his assigns, shall forthwith quit and surrender unto the said party of the first part, the above described premises, and all thereof."

He also introduced two agreements between himself and Bose: One dated October 3, 1931, wherein it was agreed that if the plaintiff failed to pay the balance of contract, in the sum of $13,250, on May 2, 1932, the agreement should be so modified that the intervener could pay thereon at the same rate of $50 per month, plus $2,000, and the balance on January 2, 1933; and one of date April 30, 1933, granting a further extension to intervener to make overdue payments.

There was also introduced oral and documentary evidence to the effect that plaintiff took possession of mines under the option contract, operated, developed, and improved them, and that Bose recognized plaintiff as the assignee of the contract, accepted from plaintiff payments as therein stipulated and also payments after default, and that no steps were taken to obtain possession of property from plaintiff or to have plaintiff's rights under the assignment agreement annulled.

As above stated, there is no controversy at this time between plaintiff and Bose, the vendor. The

option contract from Bose to the intervener, so far as Bose is concerned, has been satisfactorily performed. Bose has been paid, although in some instances a little late, the full purchase price and, as he agreed to do, has conveyed the property to the intervener's assignee, the plaintiff. There can be no question of the vendor's power and right, as between himself and the conditional vendee, to waive default in payments of the purchase price, and such waiver is conclusively shown by the vendor's acceptance of the purchase price after default. But while plaintiff as assignee of the option contract has conclusively satisfied Bose, the vendor, it is contended by the intervener that plaintiff, in failing to make the payment on or before May 2, 1932, of $13,250 falling due on that date, forfeited all rights under such assignment agreement. He asserts his assignment was a conditional one, the condition being that assignee's right to a deed of the property was contingent upon its making the payments at the times and in the amounts stipulated in the assignment agreement, and that he cannot be divested of his interest in the option except upon a strict performance of such condition, time being made an essence of the assignment agreement.

The rule contended for is frequently enforced in options to purchase property, especially mining property or property whose value is constantly fluctuating. But does the rule apply to an assignment of an option contract to purchase wherein it is agreed that the assignment shall become nullified for failure of assignee to promptly make payments to vendor at a date earlier than called for in the option contract? The option contract shows by its terms that it was intended to be binding upon the vendor and optional on the vendee, since the latter was not bound to purchase the property and could at any time forfeit or surrender the option simply by failing to make payments. The

right to purchase acquired by the option was a substantial right and conformance to its terms would ripen into a title. This option contract runs to the heirs, executors, administrators, and assigns of the vendor and vendee and in its body expressly recognizes its assignability. In other words, the vendor in advance tacitly consented that the vendee might assign his contract to another who would assume performance. 4 Am. Jur. 243, § 17.

In the sale and assignment of the option contract to plaintiff, there were no deferred payments of the purchase price. The sale was an outright sale for 300,000 shares of the plaintiff's capital stock and other considerations. The plaintiff bought all of the intervener's right, title, and interest in the option, paid for it and assumed all of its burdens. Intervener, therefore, was not interested any longer in such contract as a seller thereof, because he had disposed of all his interest in the option. His only interest thereafter was in seeing that the option contract was performed and the property deeded to the plaintiff, 300,000 shares of whose stock he had acquired for his option. The agreement in the assignment, that plaintiff should make payments one month before due under the option, and the agreements obtained by the intervener from Bose extending the time for payments, especially the one due June 2d, were only precautionary measures and had for their purpose the prevention of a forfeiture by the vendor. They served a good purpose, perhaps, but were not invoked because the option contract was performed to the satisfaction of the vendor and title vested in plaintiff as intervener intended.

If the assignment agreement and the extensions are not thus construed as mere protective measures, they were contrivances of the intervener, in which the vendor Bose participated, to enable the intervener to be subrogated to the rights of the plaintiff and to take

up the option, pay any balance, however small, and receive conveyance of mines free from all claims, in which case his stock would be valueless but he would have the whole assets of the plaintiff company.

The intervener is asking for specific performance, which is always regarded as an equitable action. One of the cardinal rules of equity is that one who asks equitable relief must offer and be ready to do equity. The intervener has completely over-, looked this rule. There is no question that plaintiff has, in perfect good faith, tried to perform its agreement. It has paid the purchase price as fixed in the option, which was well known to the intervener when he filed his third amended answer, and yet he makes no offer to reimburse plaintiff, but blandly asks that plaintiff's deed be declared null and void and that Bose, the vendor, be compelled to convey the property to him. Equity will not lend itself to such injustice.

Intervener relies upon a line of cases holding that a failure of vendee to make installment payments at the times and in the amounts stipulated in the contract *ipso facto* works a forfeiture if the contract so provides, and that no notice by the vendor declaring a forfeiture is necessary, especially where time is expressly made an essence of the contract. *Fratt* v. *Daniels-Jones Co.*, 47 Mont. 487, 133 Pac. 700, is typical of such cases. Intervener says because it is a condition of his assignment agreement that the assignment will become null and void if assignee fails to make payments as provided, a failure to make the payments, time being an essence, *ipso facto* terminated plaintiff's rights in the option and "revived" intervener's interest or title, or that the title "reverted" to or was "reinvested" in intervener. Thus it is admitted by this nomenclature that there was a divestiture of intervener's title when he executed and delivered to plaintiff an assignment of the option. In

*Fratt* v. *Daniels-Jones Co.*, *supra*, and the other cases intervener relies upon, no title to the property ever passed from the vendor to the vendee. The title, remained all the time in the vendor. Such cases are not controlling here.

Granting that the intervener retained some property interest in the option after he assigned it to the plaintiff, Pomeroy on Specific Performance, third edition, section 379, pages 807, 808, states the rule applicable to the facts of this case:

"But if a contract contains a condition subsequent; or, in other words, if the intention of the parties is that the rights under the agreement shall vest at once upon its conclusion—subject, however, to be defeated or ended upon the non-performance of the provision which constitutes the subsequent condition—or its non-performance at or before a specified day—then equity, by virtue of its general jurisdiction over penalties and forfeitures, has power to relieve the defaulting party from the loss or forfeiture caused by his breach of this subsequent condition. This power of relief would even more certainly exist when the breach was a failure, not to do the thing at all, but merely to do it at or within the time stipulated by the contract. It is, therefore, held, in a great number of cases, that the forfeiture provided for by such a clause as the one described above, on the failure of the party to fulfill at the proper time, unless such failure is intentional, or causes an injury to the other party which cannot be compensated, will be disregarded and set aside in equity; and the defaulting party, performing, or being ready and willing to perform, at a subsequent time, will be allowed to enforce the contract notwithstanding his delay."

See, also, section 380, Id., and *Monihon* v. *Wakelin*, 6 Ariz. 225, 56 Pac. 735.

We agree with the learned trial court in its comments in deciding the case:

"The contract between Mr. Houghton and the plaintiff has been fully performed. Mr. Houghton has

received his stock.　Mr. Bose has received his money. The plaintiff has received its deed to the property. This is the exact result contemplated by the parties at the time of the execution of the contract.　The gravamen of Mr. Houghton's complaint is not that he did not get all that he contracted for, or that Mr. Bose was not paid, but that Mr. Bose was not paid at the time the original contract provided that Mr. Bose be paid; but Mr. Bose is satisfied.　Therefore the court should leave the parties where it finds them.''

The judgment of the lower court is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.