[Civil No. 4470.   Filed October 13, 1942.]

[129 Pac. (2d) 918.]

ONEKAMA REALTY COMPANY, a Corporation, Appellant, v. JOHN B. CAROTHERS and LOT-TIE GRACE CAROTHERS, his wife, Appellees.

Mr. John A. Bruning, for Appellant.

Mr. L. E. Holladay, for Appellees.

LOCKWOOD, C. J.—John B. Carothers and Lottie Grace Carothers, husband and wife, plaintiffs, brought suit against Onekama Realty Company, a corporation,

defendant, and others, to cancel a certain option contract of sale, to declare all sums paid on said contract awarded to plaintiffs as and for liquidated damages for breach of contract, that plaintiffs be declared to be the owners of the premises involved in the contract, and other minor relief. Defendant answered claiming that it was the owner of the land in question, praying that a certain promissory note described in the pleadings be declared paid, and that plaintiffs take nothing by their complaint.

The case was tried to the court without a jury, and judgment was rendered substantially as prayed for in the complaint, with the exception that there was a prior lien of another defendant through a tax certificate. Thereupon the named defendant appealed. The record shows that considerable oral testimony was given, but no transcript thereof was included in the record on appeal. We must therefore, assume the findings of the trial court are correct. *Wooster* v. *Scorse,* 16 Ariz. 11, 140 Pac. 819; *Ensign* v. *Koyk,* 31 Ariz. 1, 250 Pac. 246. The findings of fact in and of themselves are not sufficient to show a complete picture of the situation, so our statement is based upon such findings, the admission of the parties and the pleadings taken together, and construed as strongly in favor of plaintiffs as is reasonably possible.

In 1913 the land which is the subject matter of this action was part of the public domain of the United States. On August 1, Philip Contzen, who was the vice-president of Catalina Water and Power Company, an Arizona corporation, hereinafter called the company, entered into an agreement with one Lillie B. Andrews, by the terms of which she granted an option to the company to purchase the land in question. This agreement, so far as material to the present case, reads as follows:

"THIS AGREEMENT, made the first day of August, 1913, between Lillie B. Andrews, of Tucson, Pima County, Arizona, the party of the first part, and Catalina Water and Power Company, a corporation of Tucson, aforesaid, the party of the second part.

"Whereas, the party of the first part has scripped, with Navajo Base Scrip—(certain lands described, being the subject matter of this suit).

" . . .

"Whereas, the party of the first part has agreed to give the party of the second part the right to purchase all of the said lands above described at any time within two years from the date hereof for the sum of three thousand dollars, with interest thereon from the date hereof until payment, at the rate of eight per cent per annum, such interest to be payable quarterly in advance.

" . . . . it is mutually agreed by and between the parties hereto as follows:

"That the party of the first part will sell and convey to the party of the second part, or to any one it may direct, the whole of the hereinbefore described real estate, together with all rights and appurtenances thereto belonging, for the said sum of Three Thousand Dollars, together with interest thereon from the date hereof until payment at the rate of eight per cent per annum, . . . ; provided that all of such sums shall be paid to the party of the first part within two years from the date hereof.

"2. . . .

"3. If the party of the second part does not pay said purchase money and interest and all disbursements hereinbefore mentioned on or before the 1st day of August, 1915, then immediately on said default being made the party of the second part, if then in possession of said property, will deliver up full and complete possession of the whole thereof to the party of the first part, . . ."

Andrews was not at the time the owner of the land she agreed to sell but had advanced to Contzen, as trustee, the sum of $3,000 for the purpose of purchasing certain Navajo Indian Base Scrip from the

Santa Fe Railroad, which was to be used to secure the land in question for her, as, and when the United States government approved the transaction and issued a patent for the land to the railroad company.

Nothing further was done in regard to the transaction and no payments were made on the contract until December 30, 1915, when a patent for the land was issued to the railroad company by the United States government. A short time thereafter it conveyed the land to Mary E. Leverich, who, on October 17, 1916, conveyed it to Philip Contzen as trustee. On November 27, 1917, Contzen conveyed the property to Lillie B. Andrews. On December 1, 1917, Margarita Contzen and Philip Contzen, her son, made and delivered to Andrews a promissory note in the amount of $3,000, payable twelve months after date, with interest. The note bore the following endorsement on its face: "a/c payment for deed to 910.67 As.—T 11 S, R 14 E" but was given as security for the performance of the contract merely, and not as payment for the land. On this same date Andrews made a bargain and sale deed to the land to Margarita Contzen as grantee, but this deed was never recorded nor delivered, being retained by Andrews. On September 26, 1917, the interest on the contract up to August 2, 1917, was paid and accepted by Andrews. An interest payment was again made paying the interest to March 1, 1920, but not specifying the amount. Thereafter, and on March 4, 1920, $1,500 was paid on the principal of the contract, and from December 7, 1920, to June 8, 1937, $1,609.60 additional was paid, without any designation as to whether it was principal or interest. These payments were made by the company or its assigns and received by Andrews or her assigns. At some time prior to December 1, 1917, the company assigned its interest in the contract to

Margarita Contzen. On January 2, 1920, Margarita Contzen made a bargain and sale deed of the property to Frank Conrow, expressly stating:

"This conveyance for the properties herein described is subsequent to a Bargain and Sale Deed executed by Lillie B. Andrews and Julius S. Andrews, her husband, to the party of the first part. (Margarita Contzen)."

On November 12, 1928, the corporate charter of the company was revoked by the Arizona Corporation Commission for failure to file annual reports and pay the registration and filing fees.

On June 28, 1930, Albert Steinfeld recovered a judgment against Philip Contzen for some $62,000, which was kept alive until May 27, 1940, when the interest of Contzen in the land was sold under execution sale to Harold Steinfeld, as executor. On August 20, 1930, Conrow deeded the property to defendant. Andrews paid the taxes on the property from 1921 to 1930, inclusive, and the taxes thereafter remained unpaid.

Shortly after the commencement of this action the land was sold to Harold Steinfeld, executor, for delinquent taxes, and treasurer's certificate duly issued.

On March 7, 1939, Andrews assigned to plaintiff her interest in the option contract above set forth, and gave a bargain and sale deed for said premises to plaintiffs. No notice of forfeiture of the contract or notice of intention was ever given by Andrews or plaintiffs to the company, or to Philip Contzen or to Margarita Contzen, or the defendant herein.

At the time of the judgment there was still due on the contract $1,500 principal, with accrued interest, and the sum of $573.09 taxes, which had been paid by Andrews, but defendant failed and refused to pay the balance due on said contract.

It is the contention of defendant (a) that by reason of the acceptance of payments on the contract after the expiration of the time permitted therein, the vendor had waived default and could not insist upon a forfeiture for failure to pay future installments until after serving notice upon the vendee, or its assigns, that strict performance would thereafter be required, and giving to the vendee a reasonable time to make any delinquent payments, and (b) that the record shows affirmatively that such a notice was never given, so that the contract is still in force and that a forfeiture thereof could not be declared by the court.

It is the position of plaintiffs, as stated in their brief, that the legal title to the property stands in them, and that there is nothing to show that defendant herein has any interest, equitable or legal, therein, but that the equitable title, if there be any as against plaintiffs, is in the stockholders of the company, subject to a judgment in favor of Harold Steinfeld, so far as Philip Contzen may have any interest therein.

■ ■ The first question we consider is whether the rights of the company, whatever they may be, had passed to defendant, or, by reason of its dissolution, were vested in the stockholders. The court made findings in regard to the dissolution of the company and the judgment obtained by Steinfeld against Contzen, but the findings are silent as to whether defendant had ever acquired the equitable interest of the company in the contract. This, however, is determined by the allegations of the complaint to the effect ''that the said Catalina Water and Power Company assigned said contract to said Margarita Contzen at some time prior to December 1, 1917,'' for a party may not deny the allegations of his pleadings without first having amended the pleadings. *Kingsbury* v. *Christy*, 21 Ariz. 559, 192 Pac. 1114. We must, therefore, assume that long before its dissolution the company had assigned

its interest in the contract to Margarita Contzen. The court further found that Margarita Contzen deeded the land to Frank Conrow, and that he in turn deeded it to defendant. We think it is clear that the equitable title of the company, so far as any existed on December 1, 1917, was, at the time of commencement of this action, in defendant.

■ ■ We consider next whether the contract had been abandoned or was subject to forfeiture. This contract, originally a mere option to purchase, became a contract of purchase and sale when the first payment was made and accepted. *United Farmers' City Market* v. *Donofrio,* 43 Ariz. 35, 29 Pac. (2d) 144. We have frequently held that where the vendor in a contract of purchase and sale has permitted the time for payment to pass, and has accepted further payments thereafter, that it constitutes a waiver of default and no forfeiture may be had for a subsequent failure unless and until the vendee is notified of the intention of the vendor to insist on strict performance, and is given reasonable opportunity to bring the payments up to date. *Bennie* v. *Becker-Franz Co.,* 14 Ariz. 580, 134 Pac. 280; Id., 17 Ariz. 198, 149 Pac. 749; *Stark* v. *Norton,* 24 Ariz. 454, 211 Pac. 66; *Tolmachoff* v. *Eshbaugh,* 41 Ariz. 318, 18 Pac. (2d) 256; *Houghton* v. *Mammoth Arizona G. M. Co.,* 50 Ariz. 44, 68 Pac. (2d) 957.

■ Since the findings of the court are to the effect that many payments were accepted long after the time set for payment in the original contract, and that no notice was ever given to defendant of a forfeiture of the contract, or notice of intention to forfeit the contract, if this action were by Andrews against defendant, a tender of the delinquent payments would have been a complete defense to the action. But this is not an action by Andrews, it is a suit by plaintiffs, and it may be asked whether they had notice of the

interest of defendant when they purchased the property from Andrews. If plaintiffs had no notice of the equitable rights of defendant at the time they made the purchase, since the legal title as shown by the records was in Andrews, they would, we think, be innocent purchasers, and, therefore, protected against equities outstanding, under our recording statutes. If, on the other hand, they had actual notice of the situation, then the mere fact that the instruments showing the equitable title were not recorded, would make no difference, for the only purpose of recording is to give constructive notice, and constructive notice is never required when actual is had.

We think there can be no contention that plaintiffs did not have actual notice of the existence of the contract, for at the same time that they accepted a deed from Andrews they purchased her rights under the contract of sale in question. We think, therefore, that plaintiffs stand in the shoes of Andrews so far as forfeiture of the contract is concerned.

The sole remaining question is whether it was necessary, in order for defendant to avoid a forfeiture of its rights under the contract, that it pay or offer to pay plaintiffs the amount then still due and payable on the contract.

Defendant contends that it was under no obligation to make any offer in order to defend the present action, for the reason that it had an absolute right to notice of the intention of plaintiffs to insist upon a strict performance before the action was brought, and cites in support of its contention the case of *Shaw* v. *Morrison,* 145 Wash. 420, 260 Pac. 666.

The case cited agrees with the general rule laid down by this court that a vendor who has accepted payments after they are due cannot thereafter insist upon strict performance of the contract unless and until he notifies the vendee of such intent and gives a

reasonable time for the vendee to bring his payments up to date. But it does not discuss the question of whether after suit brought defendant must pay, or offer to pay, the delinquent installments as a part of his defense.

The rule above stated is obviously based on the equitable principle that when one has lulled another into security by his conduct he cannot take advantage of such conduct until he has given an opportunity to the deceived party to restore the *status quo*. But the correlative of this rule, based on the familiar maxim that he who seeks equity must do equity, requires that when the vendee acquires knowledge of the intent of the vendor to insist on strict performance, no matter in what form that knowledge comes, he must within a reasonable time bring his payments up to date. We think, therefore, that if a defendant in a suit to declare a contract forfeited desires to raise the defense that the vendor by his conduct has allowed the vendee to believe that strict performance would not be insisted upon, he must offer to make the overdue payments within a reasonable time. In all the cases we have cited the record either is silent as to whether this was done or else it shows affirmatively that tender of the overdue payments was made.

We have examined the pleadings and find no offer of the defendant, within a reasonable or any time, to make any further payments upon the contract. While the court did not make any specific findings of fact as to whether defendant had or had not offered to pay the balance due on the contract, in its conclusions of law it stated ''that by reason of the failure and refusal of defendants to pay the balance due on said contract, the accrued interest thereon and the taxes paid by plaintiff, said contract is in default,'' and we must assume that the evidence was sufficient to show facts upon which such a conclusion could

426

be based. *Ensign* v. *Koyk, supra; Barth Merc. Co.* v. *Jaramillo,* 46 Ariz. 365, 51 Pac. (2d) 252; Id., 48 Ariz. 94, 59 Pac. (2d) 328.

We hold, therefore, that since there is nothing to show that defendant was willing to do equity by making the delinquent payments on the contract, and since such willingness is, in our opinion, an essential element of the defense above discussed, the trial court was justified in rendering judgment in favor of plaintiffs.

The judgment is affirmed.

McALISTER and ROSS, JJ., concur.