675 P.2d 724

U.S. FIDUCIARY CORPORATION, an Arizona corporation, as Trustee under Trust # 041073-H; Elva Hopkins, a widow; Donald W. Hopkins and Edris Jo Hopkins, husband and wife, individually and as beneficiaries under Trust # 041073-H, Plaintiffs/Appellees,

v.

LOMA VISTA ASSOCIATES, a California limited partnership; the Cali Group, a California limited partnership; John C. Federico, individually and as general partner of Loma Vista Associates and the Cali Group; and Charlotte A. Federico, wife of John C. Federico; Double JS Corporation, a Nevada corporation; James L. Samsel and Judith A. Samsel, husband and wife; Bates & Springer Realtors of Arizona, Inc., an Arizona corporation; Don Golos; Ernie Marcon; Arizona Title Insurance & Trust Company, an Arizona corporation, now known as First American Title Insurance Company, as Trustee under Deed of Trust dated December 15, 1978, recorded in the office of the Pima County Recorder in Docket 5926, Page 7, and recorded in Docket 6066, Page 144; Scharbills, a California limited partnership; Arnold E. Ascherfeld, individually and as general partner of Scharbills; and Jane Doe Ascherfeld, wife of Arnold E. Ascherfeld, Defendants/Appellants.

No. 2 CA-CIV 4771.

Court of Appeals of Arizona, Division 2.

Sept. 26, 1983.

Rehearing Denied Nov. 9, 1983.

Review Denied Jan. 17, 1984.

Croswell & Cornelio by Carmine Cornelio, Tucson, for plaintiffs/appellees.

Combs, Stone & Wright, P.C. by Christopher A. Combs and Ronald A. Kershaw, Jr., Phoenix, for defendants/appellants.

## OPINION

BIRDSALL, Judge.

This appeal is from a partial judgment entered in favor of the plaintiffs/appellees, U.S. Fiduciary Corporation as trustee and the Hopkins as beneficiaries, quieting title in certain real property and granting reformation of several deeds against the defendants/appellants John C. Federico, Loma Vista and the Cali Group. The trial court expressly found that there was no just reason for delay and entered final judgment pursuant to Rule 54(b), Arizona Rules of Civil Procedure, 16 A.R.S.

The original complaint was filed by plaintiffs/appellees U.S. Fiduciary Corporation, an Arizona corporation, as trustee under Trust # 041073–H (USFC); Elva Hopkins, a widow; Donald W. Hopkins and Edris Jo Hopkins, individually and as beneficiaries under the trust (Hopkins), against 14 named defendants. These included defendants/appellants Loma Vista Associates, a California limited partnership (Loma Vista); the Cali Group, a California limited partnership; John C. Federico, individually and as general partner of Loma Vista and Cali Group (Federico); and Charlotte A. Federico, his wife. Appellees sought reformation of certain instruments of conveyance and a decree quieting title to certain real property in themselves against each of their successors-in-interest and the principals of each: Double JS Corporation, a Nevada Corporation (Double JS); James L. Samsel and Judith A. Samsel, husband and wife (Samsel); Scharbills, a California limited partnership; Arnold E. Ascherfeld and Jane Doe Ascherfeld, wife of Arnold E. Ascherfeld (Ascherfeld).

The appellees sought various other remedies against other named defendants but it is sufficient for the purpose of this opinion that it was determined at a pretrial conference that the issues to be tried initially and from which this appeal has arisen were those raised by appellees' claims for reformation and quiet title, and by appellant Federico's counterclaim for quiet title. The balance of appellees' claims as well as the various counterclaims and cross-claims were severed for separate trial.

The factual circumstances giving rise to this action presented in the light most favorable to upholding the trial court's judgment are as follows. The property involved in this dispute consists of 115 acres of industrial zoned land located north of Tucson, adjacent to I–10. The Hopkins acquired this property in two separate purchases, which when combined, consisted of a 102-acre, L-shaped piece of property and a 13-acre, triangular piece of property. These two properties are divided by a dedicated county road, Camino de Manana.

The series of sales of the Hopkins property that led up to this dispute were as follows: from the Hopkins to Double JS, from Double JS to Scharbills, and from Scharbills to Federico and his partnerships. The litigation was necessary because of Federico's claim of ownership to the triangle parcel, a claim not made by Double JS or Scharbills, his predecessors-in-interest.

## SALES PRIOR TO FEDERICO

In 1978 the Hopkins decided to sell the L-shaped property and engaged the services of Bates & Springer, a real estate firm. The listing agreement stated that the property consisted of 110 acres more or less and that a long legal description was available in the broker's office. Additionally, the tax code parcel numbers 0020, 0030 and 0040 were contained in the agreement. Parcel number 0040 covered both a portion of the L-shaped property and the triangle. A map depicting the L-shaped property was attached, however, and there was no dispute at trial that only the L-shaped portion was listed for sale.

Double JS, whose president was James Samsel, offered to buy this L-shaped parcel and a deposit receipt and agreement was signed by Double JS and Hopkins. The legal description in this agreement properly described only the L-shaped parcel. After a survey was performed showing that the L-shaped parcel contained 102 acres, Hopkins and Double JS amended their purchase

agreement because the price was based on the amount of acreage.

Although Hopkins and Double JS intended that their transaction involve the L-shaped parcel, the legal description in the recorded contract for sale did not describe this parcel. Rather, it described a parcel consisting of substantially less acreage than that intended by the parties. Further, this description did not include the triangle.

The following is a portion of the description of the entire parcel then owned by the Hopkins (the L-shaped and triangle parcels):

"... The West 330 feet of the Southeast Quarter of the Northeast Quarter of Section 22 and those portions of the East Half of the Northwest Quarter *and* the West Half of the Northeast Quarter of Section 22...." (Emphasis supplied)

The description in the contract conveying the property to Double JS reads as follows:

"... The West 330 feet of the Southeast Quarter of the Northeast Quarter of Section 22 and those portions of the East Half of the Northwest Quarter *of* the West Half of the Northeast Quarter of Section 22 ..." (Emphasis supplied)

Neither of these legal descriptions would have accomplished what the parties intended.

Double JS then sold the property to Scharbills. Ascherfeld, its general partner, received the survey showing that there were 102 acres involved and he testified at trial that he was only buying the L-shaped parcel. The recorded contract for sale between Double JS and Scharbills contains a different legal description than the one contained in the Hopkins/Double JS contract and describes not only the L-shaped piece, but the triangle, using the first legal description set forth above. Apparently, an unknown employee for the title company noticed the mistaken use of the word "of" and replaced it with "and". This change was not noticed by the parties and appeared in all subsequent documents, including the contract in which Federico was the purchaser.

Neither Double JS nor Scharbills claimed that they owned or had any interest in the triangle. They have admitted that they did not intend to buy nor intend to sell the triangle and that if the triangle was included in the description, it was a mistake. They joined the Hopkins in their request that the court reform the contracts to meet their intentions.

## THE SALE IN CONTROVERSY

Appellant Federico, seeking investment properties on behalf of his two partnerships, first learned of the property through printed fliers distributed at a real estate exchange meeting in California. The flier depicted the property for sale as a 102-acre, L-shaped parcel, the price of which was to be calculated on a per acre basis.

In December 1978 Federico made a written offer on this property. The language contained in the offer was inserted by Federico and stated in part that he was offering to buy a 102-acre parcel, more or less, bounded on the west by Camino de Manana, Linda Vista on the north, and the T.G. & E. power line on the southwest (a description of the L-shaped parcel).

Federico had been told by Ascherfeld during negotiations that the western boundary of the property was Camino de Manana. At trial Federico testified that Ascherfeld told him to describe the property in the offer by the tax parcel numbers, which would include the triangle, but Ascherfeld denied that.

Ascherfeld accepted Federico's offer and subsequently Federico flew to Tucson to view the property. James Samsel showed the property to Federico and his wife. Samsel testified at trial that he told Federico the parcel was 102 acres and that the boundary was Camino de Manana on the west. Federico denied this and further argued that he was never explicitly told that the triangle was not included in the parcel.

Following his inspection of the property, Federico went to the office of the Pima County Assessor and informed the desk clerk that he was considering the purchase of land in Pima County identified as Tax

Parcels 0020, 0030 and 0040. The desk clerk furnished Federico a copy of a map showing the land included within these tax parcels. According to this map, the land included within these parcels was the entire 115-acre tract acquired by USFC on behalf of the Hopkins in 1973, including the triangle. After this visit Federico apparently formed the belief that 115 acres was involved and that the triangle parcel on the west side of Camino de Manana was included.

Prior to closing, Ascherfeld gave Federico a large wall map which had outlined in red the boundaries of the L-shaped piece with Camino de Manana as the western boundary. Later, after examining the incorrect legal description contained in the preliminary title report, Federico redrew the red boundary outline on the map to include the triangle parcel and inserted the tax parcel numbers. He did not tell Ascherfeld he had done so.

Prior to closing, Federico made the comment to Ascherfeld that "You are selling me more land than you think you are" or "Arnold, I think you may own more land than you know." Federico's and Ascherfeld's testimony varied as to the wording. Ascherfeld testified that there was only one such discussion. In response to Federico's comment, Ascherfeld handed Federico a survey of the L-shaped property and stated, "John, there is 102 acres like I have been telling you." Federico remained silent, but testified that he shook his head "no."

The Federico/Scharbills transaction closed on June 20, 1979. One of the documents is an affidavit signed by Federico and Ascherfeld under oath that stated that the subject property was 102 acres.

In August Ascherfeld offered to buy the triangle from the Hopkins, who had been offering it for sale, with the intention of offering it to Federico. Later in September, Federico noticed a "for sale" sign on the triangle. Events then led up to the filing of the suit—the Hopkins seeking to quiet title to the triangle and reformation, and Federico counterclaiming for quiet title to the triangle.

This matter was tried to the court sitting without a jury. The trial court entered 54 findings of fact and 19 conclusions of law. All issues were decided in favor of the Hopkins, the court granting the requested reformation of the instruments of conveyance and a decree quieting title to the triangle in the Hopkins. On appeal the appellants contend the trial court erred in concluding:

(1) That Federico had actual notice that the triangle had been included by mistake in the legal description because he failed to exercise due diligence in pursuing an inquiry which would have revealed the existence of plaintiff's claim to the triangle.

(2) That Federico had constructive notice of the error in the legal description in the Scharbills/Federico contract and of the plaintiff's claim to ownership of the triangle.

(3) That Federico was the broker for Scharbills and was not a purchaser in good faith because he breached fiduciary duties owed to his principal.

(4) That Federico acted in bad faith by failing to inform Ascherfeld that the legal description in their contract for sale included the triangle.

(5) That the trial court erred by failing to award attorney's fees and tax costs jointly and severally against each defendant liable on the judgment.

Since the first issue is dispositive of the appeal, except for the issue concerning fees and costs, we will not discuss the others.

## NOTICE

Among appellees' successors-in-interest only Federico and his partnerships defended the claims for reformation and quiet title. Federico contended he was a bona fide purchaser for value of the entire 115-acre tract without notice of appellees' adverse claim to the triangle. The trial court's decision that Federico did not so qualify rested upon four distinct grounds

expressed in the second amended findings of fact and rulings of law and judgment.

One of the grounds upon which the trial court denied Federico status as a bona fide purchaser was that he had actual notice that the triangle was included by mistake in the Scharbills/Federico contract. The court determined that he was put on notice of facts affecting title to the property but failed to make diligent inquiry which would have led to his discovery of appellees' claim to the triangle.

■ Appellants correctly state the law concerning "inquiry notice" by citing the Arizona Supreme Court in *Luke v. Smith*, 13 Ariz. 155, 108 P. 494 (1910):

"Where one has notice of a fact affecting property which he seeks to purchase, which puts him upon inquiry, he is chargeable with knowledge which the inquiry, if made, would have revealed; and one is put upon inquiry by notice of a claim which is inconsistent with the title he seeks to obtain, and must exercise due diligence to ascertain the facts upon which the claim is based." 13 Ariz. at 162, 108 P. 494.

Failure to exercise such due diligence results in a lack of bona fide purchaser status, *Davis v. Kleindienst*, 64 Ariz. 251, 169 P.2d 78 (1946).

Federico does not argue that he was not bound to undertake a diligent inquiry under the given circumstances. Rather, he suggests that he conducted a more thorough investigation than that required by law. He contends he examined all the documents in his chain of title and they were "entirely consistent with Federico's belief that Ascherfeld owned the triangle." He visited two county offices to learn about zoning restrictions and sewer connections. He visited a title company to discuss the nature and legal ramifications of a "Contract for Sale of Real Estate." He obtained a map which depicted the land which fell within the three tax code parcels.

■ Appellants place great weight on these various steps in Federico's investigation, but overlook the obvious irrelevance of many of his inquiries to the issue at hand. Was title to the triangle being conveyed? Never did Federico ask Ascherfeld or Samsel directly whether or not the triangle was included. Although this would seem to have been the simplest approach, Federico argues that he had no confidence in Ascherfeld's knowledge concerning the property and that Ascherfeld was motivated to conceal the truth. Appellants cite authority for the proposition that reliance upon a vendor or similar person with reason to conceal a prior grantee's interest does not constitute adequate inquiry for the purpose of rebutting the presumption of notice. *Berge v. Fredericks*, 95 Nev. 183, 591 P.2d 246 (1979). The *Berge* case holds that an inquiry of a seller is not sufficient inquiry. It does not hold that a seller, and the information held by the seller, should be ignored. Appellants cite no authority which supports their argument that Federico had no duty to inquire of his seller. Whether due inquiry was made is a question of fact. G. Thompson, Thompson on Real Property § 4326, at 451 (1963). Furthermore, if there is any reasonable evidence to justify the court in finding that the defendant purchased with notice then the judgment must be sustained. *Davis v. Kleindienst*, supra, at 256. Since constructive notice is never required when actual notice is had, *Onekama Realty Company v. Carothers*, 59 Ariz. 416, 129 P.2d 918 (1942), appellants' argument that the recorded document did not provide constructive notice need not be addressed.

## ATTORNEY'S FEES

■ The trial court awarded appellees' their total costs and attorney's fees under A.R.S. § 12–1103(B), against appellants Federico, Cali Group and Loma Vista. Appellants contend that inasmuch as the judgment in this case operates equally against each defendant, including Scharbills and Double JS, each should be jointly and severally liable for these costs and fees. We disagree.

A.R.S. § 12–1103(B) provides in part:

"If a party, twenty days prior to bringing the action to quiet title to real property, requests the person ... holding an apparent adverse interest or right therein to execute a quit claim deed thereto, and also tenders to him five dollars for execution and delivery of the deed, and if such person refuses or neglects to comply, the filing of a disclaimer of interest or right shall not avoid the costs and the court may allow plaintiff, in addition to ordinary costs, an attorney's fee to be fixed by the court."

In April 1980 counsel for USFC and the Hopkins had delivered to Federico, Loma Vista and Cali Group the statutorily required $5 and a quitclaim deed to the triangle, with the request that it be executed and returned. Federico refused. Both Double JS and Scharbills agreed at trial with appellees' request for reformation and quiet title. Thus, this litigation was necessary only because of Federico's claim of bona fide purchaser status. The allowance of attorney's fees in cases such as this is within the discretion of the trial court. *Sonnenberg v. Ashby,* 17 Ariz.App. 60, 495 P.2d 500 (1972). We find no abuse of discretion in the trial court's decision to award costs and fees against appellants only.

Appellees have requested attorney's fees and costs on appeal. They are directed to file a cost bill pursuant to Rule 21, Arizona Rules of Civil Appellate Procedure, 17A A.R.S., including their claim for attorney's fees.

The judgment of the trial court is affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.