NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MAC PROPERTIES LIMITED PARTNERSHIP,
*Plaintiff/Appellee,*

*v.*

D.D. DUNLAP COMPANIES, INC. et al.,
*Defendants/Appellants.*

No. 1 CA-CV 18-0148
FILED 11-21-2019

Appeal from the Superior Court in Maricopa County
No. CV2013-012287
The Honorable Kerstin G. LeMaire, Judge

**AFFIRMED**

COUNSEL

Ryan Rapp & Underwood, P.L.C., Phoenix
By John G. Ryan, Terrie S. Rendler
*Counsel for Plaintiff/Appellee*

Fidelity National Law Group, Phoenix
By Patrick J. Davis, Jamey A. Thompson
*Counsel for Defendants/Appellees*

_____

**MEMORANDUM DECISION**

_____

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Paul J. McMurdie joined.

_____

**T H U M M A**, Judge:

¶1          Defendants D.D. Dunlap Companies, Inc., and Donald H. Gibbs (collectively Dunlap) appeal from a final judgment, entered after a bench trial, declaring a Reciprocal Easement and Maintenance Agreement (REA) invalid. Dunlap also challenges an award of attorneys' fees to plaintiff MAC Properties Limited Partnership (MAC). Because the superior court correctly found the REA was not enforceable between Dunlap and MAC and properly awarded attorneys' fees to MAC, the judgment is affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2          MAC and Dunlap currently own adjacent parcels of developed land in Phoenix. When the property was being developed in 1999, Power Road Investors, LLC (Power) owned MAC's parcel and SKD Exchange, LLC (SKD) owned Dunlap's parcel.

¶3          In February 1999, Power and SKD entered into the REA and properly recorded it with the Maricopa County Recorder on March 10, 1999. The REA purports to grant "perpetual, mutual, reciprocal and non-exclusive easements in, on and over, and rights to use, the Driveway Easement Area located on each such Owner's Parcel for the purpose of ingress, egress, access, and vehicular and pedestrian traffic and parking."

¶4          The REA states the Driveway Easement Area is "[t]hat area depicted on the Site Plan," purportedly "attached . . . as Exhibit 'C.'" The SKD parcel is "legally described on Exhibit 'A'" to the REA, while the Power parcel is "described on Exhibit 'B'" to the REA. Unfortunately, no exhibits were attached to the recorded REA. That omission was never cured in a subsequent recording. Moreover, the REA itself does not include any information to identify the location of the property, such as a street address, a legal description, a tax identification number, a parcel number or any similar information. The omission of these exhibits and information in the REA as recorded produced this dispute.

¶5 By May 2005, Dunlap had acquired, through direct and indirect purchases, the SKD parcel. When Dunlap purchased the SKD parcel, First American Title Company conducted title plant searches, which did not locate the REA.

¶6 By June 2005, after the Power parcel had been transferred through several purchasers, MAC entered into a purchase agreement to acquire the Power parcel, with a scheduled September 2005 closing date. In July 2005, a MAC real estate broker sent to MAC's title insurer, Fidelity National Title Insurance Company, a copy of the REA as well as an unsigned amendment to the REA that attached legal descriptions. A cover memo noted the unsigned amendment and legal descriptions did not include recording stamps. MAC and its attorneys also received copies of these documents at about the same time.

¶7 Fidelity ran three title plant searches, using the parcel's legal description, parcel number, and names of the parties to the sale. None of these searches located the REA. An SKD/Power grantor/grantee index search did reveal the REA. However, because the REA did not include the attachments or a property description, this grantor/grantee search did not reveal what properties were benefitted or burdened by the REA or the location or scope of any easement.

¶8 As part of its additional due diligence, MAC reviewed the current leases on the Power parcel, the Public Utility Easement (PUE) and obtained an updated survey of the property. None of these undertakings disclosed the scope or location of any easement under the REA.

¶9 In September 2005, MAC closed on its purchase of the Power parcel. When a dispute later arose, MAC and Dunlap entered into a tolling agreement but were unable to resolve their dispute. In 2013, MAC filed this action, seeking a declaratory judgment that the REA was not valid and enforceable. After the close of discovery, MAC sought summary judgment. In denying that motion, the court found constructive notice presented an issue of fact; that ruling, however, did not address the validity of the REA. After a four-day bench trial, the court found for MAC, concluding the REA was "insufficient to create any permanent easements binding the MAC parcel." The court entered a final judgment declaring the REA void and awarding MAC $125,000 in attorneys' fees and $44,083.96 in costs. This court has jurisdiction over Dunlap's timely appeal pursuant to Article 6,

Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) and -2101(A)(1) (2019).[1]

## DISCUSSION

**¶10**       Dunlap argues: (1) the REA is valid and binding on the MAC parcel (and MAC as owner) because there is no requirement that an easement agreement includes a legal description; (2) after learning of the REA, and being placed on notice of its existence, MAC failed to conduct reasonable due diligence; and (3) the award of attorneys' fees to MAC was error because fees are not recoverable under the Declaratory Judgment Act.[2] The court addresses the arguments in turn.

## I.       The REA is Not Binding on MAC Because it Fails to Identify the Property Burdened or the Location and Scope of the Easement.

**¶11**       The REA is a contract between Power and SKD and is a recorded restriction on real property. Accordingly, the court interprets the REA de novo. *See IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'Ship*, 228 Ariz. 61, 66 ¶ 16 (App. 2011) (applying contract interpretation principles to easements); *Wilson v. Playa de Serrano*, 211 Ariz. 511, 513 ¶ 6 (App. 2005) ("We . . . interpret deed restrictions de novo."); *Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Turner*, 196 Ariz. 631, 634 ¶ 5 (App. 2000) ("Contract interpretation presents questions of law" subject to de novo review.).

**¶12**       Dunlap's sole legal theory is that it had an express easement under the REA. On appeal, Dunlap argues the superior court erred when it declared the REA "does not meet the requirements for an express grant of easement under Arizona law" and "is not a valid or effective grant of easement." An easement "is a nonpossessory interest in land" giving its holder a right "'to use the land of another for a specific purpose.'" *Rogers v.*

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

[2] Dunlap also argues it was prejudiced by the superior court's "reversal and direct contradiction," reflected in the post-trial rulings, when compared to the ruling on MAC's motion for summary judgment. Because Dunlap failed to raise this argument with the superior court, it is waived. *Continental Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 386 ¶ 12 (App. 2011); *Schurgin v. Amfac Elc. Distribution Corp.*, 182 Ariz. 187, 190 (App. 1995).

*Bd. of Regents of Univ. of Ariz.*, 233 Ariz. 262, 266 ¶ 9 (App. 2013) (quoting *Siler v. Arizona Dept. of Real Estate*, 193 Ariz. 374, 383 ¶ 45 (App. 1998)). Although easements can be created in various ways, as potentially applicable here, they "usually are created by express conveyance." *Rogers*, 233 Ariz. at 266 ¶ 10. The dispositive issue is whether the REA created a valid easement binding on MAC as a subsequent purchaser. If it did, the superior court erred; if it did not, the issue becomes whether MAC conducted appropriate due diligence when it learned of the REA before closing on its purchase of the Power parcel.

¶13        Arizona law contains statutory formalities required for an effective conveyance of an interest in real property. *See* A.R.S. § 33-401(A), (B) (requiring all conveyances to be "an instrument in writing, subscribed and delivered," "signed by the grantor" and "duly acknowledged before some officer authorized to take acknowledgments"); *see also* A.R.S. § 33-416 (properly recording a document transferring interest in real estate is "notice to all persons of the" transfer); A.R.S. § 11-463 (indexing requirements for county recorders). Dunlap argues that the REA is valid and binding on MAC because these requirements were met, and Arizona law does not require an easement to include a legal description of the land encumbered or benefitted or the easement itself.

¶14        Dunlap's argument fails because, despite compliance with conveyance formalities, the REA is facially inadequate to bind subsequent purchasers. For an easement to be binding on subsequent purchasers, "the instrument must identify with reasonable certainty the easement created and the dominant and servient tenements . . . . The description requires a certainty such that a surveyor can go upon the land and locate the easement from such description." *Dunlap Investors Ltd. v. Hogan*, 133 Ariz. 130, 132 (1982) (citations and quotation marks omitted). Stated differently, a person searching the record must be able to, "from the instrument, identify the land involved." *Id.* If these standards are not met, "the easement is void as to third parties because of vagueness." *Id.*[3]

¶15        On this record, the superior court properly found the REA did not meet these requirements. The REA does not contain a description of the parcels benefitted or encumbered, the easement itself (or the location or scope of any easement) or even the land involved. Although the three exhibits referenced in the REA may have done so, they were never recorded

---

[3] Although Dunlap points to factual differences between *Hogan* and this case, Dunlap has not shown how those differences mean *Hogan*'s requirements do not apply to the REA.

with the REA. Nor does the REA state the property address, tax parcel number or any other information identifying the property or that could be used to do so. On this record, the superior court properly concluded the REA did not meet the *Hogan* specificity requirements and, as a result, did not err in finding the REA did not bind MAC.

## II. The Court Did Not Err in Finding MAC Conducted a Reasonably Diligent Inquiry.

¶16 MAC did not dispute that it knew of the REA and that it was on inquiry notice regarding possible easements for parking and ingress/egress before it purchased the Power parcel. *See* A.R.S. § 33-416. Accordingly, as declared in territorial days, MAC was "chargeable with the knowledge which the inquiry, if made, would have revealed . . . , and must exercise due diligence to ascertain the facts upon which the claim is based." *Luke v. Smith*, 13 Ariz. 155, 162 (1910). Whether MAC exercised such reasonable due diligence is a question of fact. *U.S. Fiduciary Corp. v. Loma Vista Assocs.*, 138 Ariz. 464, 468 (App. 1983). This court views the evidence in the light most favorable to upholding a ruling following a bench trial. *Double AA Builders, Ltd. v. Grand State Constr. L.L.C.*, 210 Ariz. 503, 506 ¶ 9 (App. 2005).

¶17 A party on inquiry notice is charged with "knowledge of all of the facts a reasonably diligent inquiry would disclose." *Hall v. World Sav. and Loan Ass'n*, 189 Ariz. 495, 500 (App. 1997) (quotation omitted). In some cases, it is reasonable for a party on inquiry notice to check only the recorded documents. *See Neal v. Hunt*, 112 Ariz. 307, 311 (1975) ("[A]bsent other notice, a search of the record was sufficient under the facts in this case."). In other cases, it is necessary to conduct a reasonably careful inspection of the premises. *See Shalimar Ass'n v. D.O.C. Enters., Ltd.*, 142 Ariz. 36, 44 (App. 1984) (noting a grantee takes the property subject to an adverse right if the right would have been disclosed after a reasonably careful inspection of the premises, followed by inquiry). A party "may not willfully ignore information at hand," but it need not "seek out the information on which the duty of further inquiry as a matter of law is invoked." *Valley Nat'l Bank of Ariz. v. Avco Dev. Co.*, 14 Ariz. 56, 61 (App. 1971).

¶18 Dunlap argues the superior court erred in concluding MAC performed a diligent inquiry, involving attorneys, title insurers and a survey that did not result in MAC obtaining reasonable certainty about the existence, scope or location of the claimed easement. Specifically, Dunlap argues MAC was required (but failed) to: conduct a grantor/grantee index

search, compare the REA with the PUE, review the leases and compare attached site plans to the REA, speak with the REA's drafting attorney, investigate the zoning history of the parcels and inspect the property and that, had it done these things, the application of the REA to the parcel MAC purchased would have become apparent.

**¶19**        Contrary to Dunlap's argument, the court found Fidelity's title searches were proper and met the standard of care. A review of the leases did not reveal or create any easements. Furthermore, the court found that none of the site plans (leases, amendment to the REA and the PUE) defined the scope and location of an easement created by the REA. Ultimately, the court found "MAC performed a diligent inquiry, including consulting with its attorneys and title insurer and obtaining a survey of the MAC Parcel to confirm whether there were any easements affecting the MAC Parcel" and that "MAC's inquiry did not result (and could not have resulted) in MAC locating a valid and enforceable easement agreement" or "having reasonable certainty about the existence, scope or location of the claimed easements."[4]

**¶20**        Although Dunlap argues the evidence could have been viewed differently, it is the superior court at trial (not this court on appeal) that resolves conflicting evidence. *See Godwin v. Farmers Ins. Co. of Am.*, 129 Ariz. 416, 419 (App. 1981). Nor has Dunlap shown that the superior court erred in finding, on the evidence presented, that MAC failed to undertake a reasonably diligent inquiry that, otherwise, would have revealed a valid, enforceable easement encumbering the MAC Parcel. On this record, Dunlap has not shown the superior court erred in finding that MAC conducted a reasonably diligent inquiry.

---

[4] Citing *Manicom v. CitiMortgage*, Dunlap argues constructive notice requires further inquiry. 236 Ariz. 153 (App. 2014). In *Manicom*, however, the recorded document contained a correct legal description and street address but listed in error that the plat was recorded "IN CABINET D, SLIDE 168," when in fact it was recorded in Cabinet D, Slide 166. 236 Ariz. at 155 ¶ 2. In reversing a grant of summary judgment, *Manicom* held that error did not invalidate the recorded document or mean it "failed to provide constructive notice." *Id.* at 157 ¶ 14. Unlike *Manicom*, the REA contains no description of the easements or the properties affected by it. Moreover, Dunlap challenges a decision made after trial, not a summary judgment ruling.

### III.    The Superior Court Properly Awarded Attorneys' Fees to MAC.

¶20        Dunlap challenges the superior court's award of attorneys' fees to MAC. Dunlap argues MAC could not recover fees for three reasons: (1) Arizona's version of the Uniform Declaratory Judgments Act only permits the recovery of costs; (2) MAC failed to plead attorneys' fees under the REA; and (3) this dispute did not arise out of contract. This court reviews the application of A.R.S. § 12-341.01(A) de novo, but an award of attorneys' fees is reviewed for abuse of discretion. *Rudinsky v. Harris*, 231 Ariz. 95, 101 ¶ 27 (App. 2012).

¶21        Dunlap's argument that Arizona's Declaratory Judgments Act precludes an award of attorneys' fees ignores this court's opinions awarding attorneys' fees when a declaratory judgment action satisfies the requirements of A.R.S. § 12-341.01. *E.g.*, *Maleki v. Desert Palms Prof'l Props., L.L.C.*, 222 Ariz. 327, 334 ¶¶ 34–35 (App. 2009); *John Deere Ins. Co. v. West Am. Ins. Grp.*, 175 Ariz. 215, 216, 218-19 (App. 1993); *Nationwide Mut. Ins. Co. v. Granillo*, 117 Ariz. 389, 394-395 (App. 1977).

¶22        The cases Dunlap relies upon in making this argument do not consider the application of A.R.S. § 12-341.01 to a declaratory judgment action. *See, e.g.*, *Golden Pisces, Inc. v. Fred Wahl Marine Constr., Inc.*, 495 F.3d 1078, 1083-84 (9th Cir. 2007) (declining to award fees in an admiralty case where contract was void for lack of mutual assent); *Spanier v. United States Fidelity and Guaranty Co.*, 127 Ariz. 589, 598–600 (App. 1980) (declining to award fees in garnishment action); *State Farm Mutual Automobile Ins. Co. v. O'Brien*, 24 Ariz. App. 18, 21-22 (1975) (decided before enactment of A.R.S. § 12-341.01 in 1976). Simply put, contrary to Dunlap's argument, Arizona's Declaratory Judgments Act does not prohibit an award of fees under A.R.S. § 12-341.01 if the showing required by that statute is made.

¶23        Dunlap correctly argues MAC did not plead a claim for fees under the REA. In seeking fees under A.R.S. § 12-341.01, MAC was not required to plead a claim for fees under the REA. *See* Ariz. R. Civ. P. 54(g)(1); *see also Arizona Attorneys' Fees Manual* § 1.3.1 (Bruce Meyerson & Patricia K. Norris eds., 5th ed. 2010). Because the superior court awarded fees pursuant to section 12-341.01, not the REA, MAC did not waive any claim for attorneys' fees.

¶24        Finally, on appeal, Dunlap argues this dispute did not arise out of contract, a requisite for an award of fees under A.R.S. § 12-341.01. In answering MAC's amended complaint, however, Dunlap sought attorneys' fees under A.R.S. § 12-341.01, along with the REA. Dunlap has not, on

appeal, explained how it could seek fees under this statute but claim MAC could not. "[T]his court will look to the nature of the action and the surrounding circumstances to determine whether the claim is one 'arising out of a contract.'" *Marcus v. Fox*, 150 Ariz. 333, 335 (1986) (citation omitted). Although the court declared the REA insufficient to create any binding easements, MAC is still entitled to attorneys' fees given that this matter arose out of contract. Indeed, under A.R.S. § 12-341.01, "fees may be awarded to successful parties who have proven the absence of the contract sued upon by the opposing party." *Arizona Attorneys' Fees Manual* § 2.5, *supra* (citing cases); *accord Rudinsky*, 231 Ariz. at 101 ¶ 27 (noting that an action still arises out of contract, even though the defendant proved the absence of a contract); *Nolan v. Starlight Pine Homeowners Ass'n*, 216 Ariz. 482, 490 ¶ 36 (App. 2007) ("[A] court may award fees to a defendant in a contract action if the defendant prevails on the basis that there is no contract . . . ."). The superior court properly could find this action arose out of a contract, making MAC eligible for an award of fees under A.R.S. § 12-341.01. *See Marcus*, 150 Ariz. at 335.

## IV. Attorneys' Fees on Appeal.

**¶25** Both parties request attorneys' fees and costs incurred on appeal. In doing so, Dunlap fails to cite any substantive authority (as is required by Arizona Rules of Civil Procedure 21) and also is not the prevailing party on appeal. Accordingly, Dunlap's request is denied. MAC's request for attorneys' fees on appeal pursuant to A.R.S. § 12-341.01 is granted, and MAC also is awarded its taxable costs on appeal, all contingent upon its compliance with Ariz. R. Civ. App. P. 21.

## CONCLUSION

**¶26** The judgment is affirmed.

